NO. 25-40161

# United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ANTHONY JAMES MADRID,

*Defendant - Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas, Beaumont Division
No. 1:21-CV-507

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

Jay R. Combs
United States Attorney
Eastern District of Texas

Bradley Visosky
Assistant United States Attorney
101 E. Park Boulevard, Suite 500
Plano, Texas 75074
(972) 509-1201

ATTORNEYS FOR THE UNITED STATES

**Statement Regarding Oral Argument**

The United States submits that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record. Fed. R. App. P. 34(a)(2)(C).

# Table of Contents

**Page(s)**

Statement Regarding Oral Argument.................................................................i

Table of Authorities ...................................................................... iii

Statement of Jurisdiction ....................................................................1

Statement of Issues.......................................................................1

Statement of the Case .....................................................................1

Summary of Argument.....................................................................8

Argument....................................................................................11

    I. Madrid's challenge to the constitutionality of 18 U.S.C. § 924(c) is not cognizable on initial collateral review. ................................................ 11

    II. Section 924(c)'s prohibition on possessing a firearm in furtherance of a drug-trafficking crime is consistent with the Second Amendment..... 27

Conclusion...................................................................................48

Certificate of Service ......................................................................49

Certificate of Compliance ................................................................49

# Table of Authorities

**Federal Cases**                                                    **Page(s)**

*Aptheker v. Secretary of State,*
  378 U.S. 500 (1964) .................................................................. 32

*Bousley v. United States,*
  523 U.S. 614 (1998) ............................................................. 20, 22

*City of Los Angeles v. Patel,*
  576 U.S. 409 (2015) .................................................................. 38

*Class v. United States,*
  583 U.S. 174 (2018) .................................................................. 37

*Clay v. United States,*
  537 U.S. 522 (2003) .................................................................. 14

*Costigan v. Yost,*
  334 F. App'x 460 (3d Cir. 2009) ............................................... 33

*Counterman v. Colorado,*
  600 U.S. 66 (2023) ................................................................... 32

*Dean v. United States,*
  129 S.Ct. 1849 (2009) ............................................................... 37

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ............................................................. *passim*

*Hargrave v. Dugger,*
  832 F.2d 1528 (11th Cir. 1987) ................................................. 21

*Heller v. Dist. of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011) ................................................ 21

iii

*Hines v. United States,*
  971 F.2d 506 (10th Cir. 1992)........................................................18

*House v. Bell,*
  547 U.S. 518 (2006)....................................................................22

*Int'l Bhd. of Elec. Workers, Loc. 501, A.F. of L. v. N.L.R.B.,*
  341 U.S. 694 (1951)....................................................................32

*Mayle v. Felix,*
  545 U.S. 644 (2005)....................................................................26

*McDonald v. City of Chicago, Ill.,*
  561 U.S. 742 (2010)....................................................................29

*McLaughlin v. United States,*
  476 U.S. 16 (1986)......................................................................44

*Medina v. Whitaker,*
  913 F.3d 152 (D.C. Cir. 2019)......................................................21

*Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms &
  Explosives,*
  714 F.3d 334 (5th Cir. 2013)........................................................21

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022)..............................................................*passim*

*Planned Parenthood of Southeastern Pa. v. Casey,*
  505 U.S. 833 (1992)....................................................................38

*Reed v. Ross,*
  468 U.S. 1 (1984)..................................................................20, 21

*Robertson v. Baldwin,*
  165 U.S. 275 (1897)....................................................................30

*Saffle v. Parks,*
  494 U.S. 484 (1990)......................................................................15

*Sawyer v. Smith,*
  497 U.S. 227 (1990)......................................................................15

*Schiro v. Summerlin,*
  542 U.S. 348 (2004)................................................................ 14, 15

*Smith v. Johnson,*
  216 F.3d 521 (5th Cir. 2000).................................................... 18, 19

*Smith v. Murray,*
  477 U.S. 527 (1986)......................................................................22

*Smith v. United States,*
  508 U.S. 223 (1993)......................................................................45

*Teague v. Lane,*
  489 U.S. 288 (1989)......................................................................15

*United States v. Alaniz,*
  69 F.4th 1124 (9th Cir. 2023) .................................................. 43, 46

*United States v. Barnes,*
  953 F.3d 383 (5th Cir. 2020)..................................................... 24, 25

*United States v. Barragan-Gutierrez,*
  136 F.4th 998 (10th Cir. 2025) ................................................. 26, 34

*United States v. Bena,*
  664 F.3d 1180 (8th Cir. 2011).........................................................21

*United States v. Bryant,*
  711 F.3d 364 (2d Cir. 2013) ...........................................................33

*United States v. Cash,*
  2023 WL 6532644 (3d Cir. Oct. 6, 2023) ............................. 34, 43, 44

*United States v. Cervantes,*
  132 F.3d 1106 (5th Cir. 1998) ................................................ 16, 19

*United States v. Cruikshank,*
  92 U.S. 542 (1875) ................................................................. 12, 29

*United States v. Davis,*
  588 U.S. 445 (2019) ...................................................................... 24

*United States v. Duran,*
  934 F.3d 407 (5th Cir. 2019) ......................................................... 5

*United States v. Frazier,*
  314 F. App'x 801 (6th Cir. 2008) ................................................. 33

*United States v. Gonzalez,*
  592 F.3d 675 (5th Cir. 2009) ................................................... 26, 27

*United States v. Greeno,*
  679 F.3d 510 (6th Cir. 2012) ........................................................ 42

*United States v. Harper,*
  766 F.3d 741 (7th Cir. 2014) ........................................................ 45

*United States v. Jackson,*
  555 F.3d 635 (7th Cir. 2009) ............................................. 33, 36, 47

*United States v. Jones,*
  134 F.4th 831 (5th Cir. 2025) ...................................................... 24

*United States v. Kimble,*
  142 F.4th 308 (5th Cir. 2025) ............................................... *passim*

*United States v. London,*
  937 F.3d 502 (5th Cir. 2019)......................................................26

*United States v. Madrid,*
  852 F. App'x 864 (5th Cir. 2021) ..............................................4, 14

*United States v. Moore,*
  2024 WL 3629416 (3d Cir. April 16, 2024)..................................46

*United States v. Morgan,*
  230 F.3d 1067 (8th Cir. 2000)....................................................22

*United States v. Palumbo,*
  468 F. App'x 751 (9th Cir. 2012) ...............................................37

*United States v. Patten,*
  40 F.3d 774 (5th Cir. 1994)........................................................17

*United States v. Poindexter,*
  942 F.2d 354 (6th Cir. 1991)......................................................37

*United States v. Potter,*
  630 F.3d 1260 (9th Cir. 2011)....................................................33

*United States v. Rahimi,*
  602 U.S. 680 (2024)..............................................................46, 47

*United States v. Reece,*
  938 F.3d 630 (5th Cir. 2019)......................................................12

*United States v. Risner,*
  129 F.4th 361 (6th Cir. 2025) ..............................................34, 38

*United States v. Ruiz,*
  2024 WL 1134725 (5th Cir. March 15, 2024)..............................34

*United States v. Shaid,*
  937 F.2d 228 (5th Cir. 1991) ............................................................ 16

*United States v. Sloley,*
  19 F.3d 149 (4th Cir. 1994) .............................................................. 37

*United States v. Thorton,*
  395 F. App'x 574 (11th Cir. 2010) .................................................... 33

*United States v. Torres-Rosario,*
  658 F.3d 110 (1st Cir. 2013) ............................................................ 45

*United States v. Underwood,*
  129 F.4th 912 (6th Cir. 2025) ....................................... 33, 38, 41, 43

*United States v. Villano,*
  529 F.2d 1046 (10th Cir. 1976) ........................................................ 32

*United States v. Williams,*
  553 U.S. 285 (2008) .......................................................................... 32

*United States v. Willis,*
  273 F.3d 592 (5th Cir. 2001) .............................................. 16, 18, 19

*United States v. Yanez Sosa,*
  513 F.3d 194 (5th Cir. 2008) ............................................................ 45

*Whorton v. Bockting,*
  549 U.S. 406 (1007) .......................................................................... 14

**Federal Statutes and Rules**

18 U.S.C. § 922(g)(1) ................................................................. 2, 10, 44

18 U.S.C. § 924(c) .................................................................... *passim*

18 U.S.C. § 924(c)(1)(A) ....................................................... 34, 35, 37

18 U.S.C. § 1621 ......................................................................... 36

18 U.S.C. § 3231 ........................................................................... 1

21 U.S.C. § 841(a)(1) ..................................................................... 2

28 U.S.C. § 2255 ................................................................... *passim*

28 U.S.C. § 2253 ........................................................................... 1

28 U.S.C. § 2255(d) ....................................................................... 1

28 U.S.C. § 2255(f)(1) .................................................................. 25

28 U.S.C. § 2255(f)(3) .................................................................. 25

Fed. R. App. P. 32(a)(5) ............................................................... 49

Fed. R. App. P. 32(a)(6) ............................................................... 49

Fed. R. App. P. 32(a)(7)(B) .......................................................... 49

Fed. R. App. P. 32(f) .................................................................... 49

Fed. R. App. P. 34(a)(2)(C) ............................................................. i

Fed. R. Civ. P. 15(c) .................................................................... 26

Fed. R. Civ. P. 15(c)(1)(B) ........................................................... 26

Fed. R. Crim. P. 11(b)(3) .............................................................. 37

*Other Authorities*

*James Parker, Conductor Generalis: Or, the Office, Duty and Authority of Justices of the Peace 10-14 (printed in Woodbridge, N.J., in 1764; New York, N.Y. in 1788; and Philadelphia, Pa., in 1792)*................................................................................................41

*Lynn Marsella, Something About Carry: Supreme Court Broadens the Scope of 18 U.S.C. § 924(c), 89 J. Crim. L. & Criminology 973, 975 (1999)* ...............................................................................................46

Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12..................................................................40

Act for the Punishing Criminal Offenders, 1701 N.H. Laws 15 ............................................................................40

Act to Appoint Constables, ch. 5, § 2, 1741 N.C. Laws 47.....................................................................40

Act for the Punishment of Burglary and Robbery, 1783 Conn. Laws 633............................................................. 15, 41

Act of June 10, 1799, ch. 806, § 2, 1798 N.J. Laws 562 ....................................................................42

Act of Feb. 28, 1799, 1799 Miss. Laws 44-47 ............................... 15, 41

Act Forbidding and Punishing Affrays, ch. 49, 1786 Va. Laws 35..................................................................  40, 41

Act of March 13, 1806, §§ 1-2, 1806 Mass. Laws 121 ........................41

Act of Jan. 6, 1810, ch. 138, § 7, 1809 Md. Laws 92 ..........................42

Act of Sept. 17, 1807, ch. 6, §§ 4-5, 1807 Ind. Laws 236-37................41

Act of Dec. 20, 1817, 7th div., § 18, 1817 Ga. Laws 120 ...................... 42

Acts of Feb. 23 and Mar. 19, 1821, ch. 6, §§ 1-2, ch. 7, §§ 7-8,
  1821 Maine Laws 58-59, 62 ...................................................... 41

Act of Aug. 1, 1827, 11th div. § 134, 1826 Ill. Laws 152 ..................... 42

Act of May 13, 1837, § 9, 1837 Miss. Laws 292 ................................... 42

Act of Apr. 28, 1854, ch. 2, § 30, 1854 Wash. Laws 80 ....................... 42

Act of May 5, 1855, § 1, 1855 Cal. Laws 268 ...................................... 42

Act Concerning Crimes and Punishments, § 40,
  1864 Idaho Laws 304 .............................................................. 42

Act of Oct. 26, 1866, ch. 61, § 1, 1866 Tex. Laws. 60 ......................... 42

Act of Sep. 30, 1867, § 1, 1867 Ariz. Laws 21 .................................... 42

Act of July 23, 1868, § 13, 1868 Ark. Laws 218 ................................. 43

Act of Jan. 29, 1869, § 4, 1869 N.M. Laws 73 .................................... 43

Act of Mar. 4, 1873, § 1, 1873 Nev. Laws 118 .................................... 42

Act of Mar. 13, 1875, § 1, 1875 Ind. Laws ........................................ 43

Act of May 24, 1879, § 1, 1879 Ill. Laws 115 ..................................... 43

Act of Apr. 17, 1877, § 1, 1877 Mo. Laws 240 ................................... 42

Act of Mar. 4, 1882, § 1, 1882 Wyo. Laws 174 ................................... 42

Act of Mar. 12, 1885, § 1, 1885 Mont. Laws 74-75 ............................. 42

Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms, 95 Notre Dame L. Rev. 397 (2019)*..................................................30

*A Law Respecting Crimes and Punishments, ch. 6, Laws Passed in the Territory of the United States North-West of the River Ohio 19-21 (1792)* ..................................................................................41

*Act for the Punishment of Certain Crimes §§ 11-12, Laws of the Territory of Louisiana: Comprising All Those Which are Now Actually In Force Within the Same 308-09 (1808)*...........................41

## STATEMENT OF JURISDICTION

Anthony James Madrid appeals from an order of the district court denying his pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The district court (Crone, J.) had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. This Court granted a certificate of appealability on the issue of whether 18 U.S.C. § 924(c) is constitutional in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). This Court has jurisdiction under 28 U.S.C. §§ 2253 and 2255(d).

## STATEMENT OF ISSUES

1.      Whether Madrid's Second Amendment challenge to § 924(c) can be raised for the first time on collateral review or is otherwise barred by the collateral-review/appeal waiver in the plea agreement and the applicable one-year limitations period.

2.      Whether § 924(c)'s prohibition on using or carrying a firearm during and in relation to a drug-trafficking crime is unconstitutional under *Bruen*.

## STATEMENT OF THE CASE

**A.    Madrid is charged with three drug-trafficking and firearm-related offenses and pleads guilty to two of them.**

A grand jury charged Anthony James Madrid in a three-count superseding indictment with possessing with the intent to distribute

500 or more grams of cocaine, 21 U.S.C. § 841(a)(1) (count one); (2) discharging a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c) (count two); and (3) possessing a firearm as a felon, 18 U.S.C. § 922(g)(1) (count three). ROA.196-98. Madrid entered into a plea agreement with the government in which he agreed to enter a plea of guilty to the § 841(a)(1) offense in count one and the § 924(c) offense in count two. ROA.480. In exchange, the government agreed to dismiss the § 922(g)(1) charge in count three. ROA.486.

The parties filed a written factual basis in connection with Madrid's guilty plea. ROA.229-33. In it, Madrid admitted the following facts. He owed drug traffickers a debt for cocaine that he kept in his home. ROA.230. On January 24, 2019, the drug traffickers to whom Madrid owed the debt drove to his home wearing ski masks. ROA.230. After Madrid saw the men approaching his front door, Madrid retrieved an AK-47-style rifle that he kept in the home. ROA.230. He fired several rounds from the weapon, intending to strike his drug creditors, but he accidentally shot his girlfriend and child instead. ROA.230.

A search of Madrid's residence uncovered a distributable amount of powder cocaine, the AK-47 used to commit the shooting, and a .38 caliber revolver. ROA.231. Police found larger amounts of

2

cocaine packed in Ziplock bags, known as "bricks," and smaller amounts, though still distributable, contained in smaller baggies. ROA.231. Police also found digital scales and a money counter. ROA.231. Madrid admitted that he "discharged the AK-47 during and in relation to his possession with intent to distribute the cocaine, in which he owed money to the drug traffickers breaking into his house." ROA.231.

> Madrid signed a written factual basis, attesting:

> I have read this factual basis and the first superseding indictment, or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and agree without reservation that it accurately describes the events and my acts.

ROA.232. At the change-of-plea hearing, Madrid attested before a magistrate judge, under oath, ROA.446, that he had read the entire factual basis, that he understood everything in it, that everything in it was true and correct, that he signed it, and that he understood and agreed with it when he signed it. ROA.462. He further acknowledged and agreed that the facts set forth in the factual basis constituted proof that he had committed the crimes described in counts one and two of the first superseding indictment. ROA.463.

The magistrate judge recommended that the district court accept Madrid's guilty plea, ROA.234-39, and the district court

accepted it, ROA.240. The court sentenced Madrid to serve 87 months in prison on count one, to be followed by a consecutive 120-month term on count two, for a total of 207 months. ROA.287. Madrid noticed an appeal, ROA.294-95, but this Court dismissed the appeal as frivolous, *United States v. Madrid*, 852 F. App'x 864 (5th Cir. 2021).

**B.    Madrid files a motion to vacate his sentence under 28 U.S.C. § 2255, asserting only an ineffective-assistance claim, and years later moves to additionally assert a Second Amendment claim.**

On October 5, 2021, Madrid filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ROA.4-31. He presented only one ground for relief, a claim of ineffective assistance of counsel. Madrid claimed that his defense attorney had "grossly misrepresented" the sentence he would receive if he accepted the government's plea offer. ROA.22. According to Madrid, his attorney had promised that he would receive a 10-year prison sentence, even though the lowest sentence he could possibly receive (based on the mandatory minimums at play) was 15 years. ROA.22-23.

A magistrate judge ordered the government to respond to Madrid's § 2255 motion, ROA.35, and the government filed its response on December 14, 2021, ROA.38-44. The government pointed out that the record showed that Madrid had been advised of the

potential range of punishment for each of the charges against him and that he had attested under oath before the magistrate judge that no one had made him any promises apart from those set forth in his plea agreement, which did not promise a certain sentence. ROA.41, 460.

While Madrid's § 2255 motion was pending, the Supreme Court, on June 23, 2022, decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* held that the Second Amendment protects the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." *Id.* at 10. On June 1, 2024[1] — almost two years after the Supreme Court issued *Bruen* — Madrid filed a motion for leave to supplement his § 2255 motion to assert a *Bruen*-based claim. ROA.58-64. Madrid said that he "did not become aware until recently that Discharging a Firearm During and Relation to a Drug Trafficking Crime; 18 USC § 924(c), infri[n]ges upon the 'plain text' of the 2nd Amendment and Madrid's rights to bare [sic] arms, and that the indictment in the instance [sic] case fails to state an offense 'as applied' to Madrid." ROA.59.

---

[1] "Under the prison mailbox rule, a pro se prisoner's pleading is considered filed when the document is placed in the prison mailing system." *United States v. Duran*, 934 F.3d 407, 412 (5th Cir. 2019). Here, Madrid did not supply evidence establishing when he tendered his motion for leave to prison officials. The precise date he did so is immaterial for these purposes, however, so the government will use the date Madrid asserted in his certificate of service, June 1, 2024. ROA.64.

**C.** **The district court denies Madrid's § 2255 motion in its entirety, and this Court grants a certificate of appealability on whether § 924(c) is constitutional in light of *Bruen*.**

On November 18, 2024, the magistrate judge entered an order granting Madrid's motion for leave to supplement his § 2255 motion. ROA.68. The very next day, November 19, 2024, the magistrate judge issued a report and recommendation that Madrid's § 2255 motion — including both his original ineffective-assistance claim and his new Second Amendment claim — be denied. ROA.69-84. The magistrate judge determined that Madrid's ineffective-assistance claim was without merit because his assertion that his attorney promised him a certain sentence was "directly contradicted by [Madrid's] assertions in court under oath." ROA.81. The magistrate judge also rejected Madrid's Second Amendment claim, finding that "[t]he text of the Second Amendment does not cover an individual's right to use or carry a firearm 'during and in relation to' a federal drug trafficking crime[.]" ROA.83.

Madrid filed a series of objections to the magistrate judge's report and recommendation. ROA.85-135. Madrid attached to his objections, for the first time, sworn declarations from himself and his girlfriend, whom he had shot, Kendrieca Ferguson. ROA.94-99. In his declaration, Madrid described the events of January 24, 2019. Madrid

6

said that that morning, after hearing car doors close outside, he saw "black masked individuals with guns that readily appeared to be coming to kick-in the front door of our rental home[.]" ROA.131. Madrid asserted that he grabbed an assault rifle that he had in the house, waited for the intruders, and that upon hearing footsteps he fired a shot that struck Kendrieca by mistake. ROA.131-32. Madrid said that he "only armed myself with the said assault rifle with the intent to protect my family . . . from the masked intruders . . . as the law so permits me to – the 'castle doctrine[.]'" ROA.99, 133. Madrid's declaration did not mention that the "masked intruders" were really drug traffickers coming to collect on a debt Madrid owed them for cocaine he kept in his house.

The district court overruled Madrid's objections and adopted the findings of fact and conclusions of law made by the magistrate judge. ROA.137-140. The court also declined to issue a certificate of appealability. ROA.139. The court entered final judgment denying Madrid's § 2255 motion, ROA.141, and Madrid timely noticed an appeal of the judgment, ROA.142.

Madrid moved for a certificate of appealability before this Court. The Court granted a certificate "on the issue whether § 924(c) is constitutional in light of the Supreme Court's decision in [*Bruen*]." Order (doc. 34-2), No. 25-40161, at 2. The Court noted, however, that

"[w]hile Madrid also appears to argue that there was insufficient evidence in support of his § 924(c) conviction, we will not consider new issues raised for the first time in an application for a COA." *Id.* at 1-2. The Court further determined that Madrid had waived review of any challenge to his ineffective-assistance claim. *Id.* at 2. Finally, the Court directed the parties to "address the cognizability of Madrid's [*Bruen*-based] challenge on initial collateral review." *Id.*

### SUMMARY OF ARGUMENT

1. Almost three years after his conviction became final, and almost two years after the Supreme Court decided *Bruen*, Madrid sought leave to amend his § 2255 motion to include a claim that his § 924(c) conviction was unconstitutional under the Second Amendment. That was the first time he had raised that claim; he did not present it before the district court in his criminal case or on direct appeal. Accordingly, the claim is not cognizable on initial collateral review unless Madrid can show cause for not presenting it earlier.

Madrid cannot make such a showing. He cannot demonstrate cause by arguing that any Second Amendment claim he may have raised on direct appeal would have failed. Nor can Madrid show cause by arguing that *Bruen* was so "novel" that no attorney before *Bruen* would have had the tools to argue that § 924(c) was unconstitutional under the Second Amendment based on history and tradition. Before

*Bruen* courts advanced text-and-history-based arguments of the type that *Bruen* ultimately "reiterated."

Madrid's Second Amendment challenge is also barred by the plain language of the collateral-review and appeal waiver in his plea agreement. Madrid waived the right to contest his conviction and sentence by way of an appeal or a § 2255 motion, reserving only the right to challenge any punishment that exceeded the statutory maximum or a claim of ineffective assistance of counsel. His constitutional challenge raised in his supplement to his § 2255 motion falls within the heart of the waiver and not within the exceptions.

Madrid's Second Amendment challenge is also untimely. Madrid did not seek to add it to his § 2255 proceeding until almost three years after his conviction became final and almost two years after the Supreme Court decided *Bruen*. The Second Amendment claim did not relate back to his original, timely-filed § 2255 motion because it differed in both time and type from the sole ineffective-assistance claim he raised in his original motion.

2. Even if Madrid's motion were cognizable, not barred by the collateral-review/appeal waiver, and timely, it would fail on the merits. The Second Amendment's plain text does not protect the right to possess firearms for unlawful purposes, such as to aid one's drug trafficking. The Supreme Court has long interpreted the Amendment

as protecting firearm possession for *lawful* purposes. That view is consistent both with the historical understanding of the right and the way other constitutional rights are treated.

Section 924(c) requires a connection between the use or carriage of a firearm and drug trafficking. Madrid admitted in his criminal case that he discharged an AK-47 during and in relation to his cocaine distribution. Specifically, Madrid admitted that he intended to shoot drug traffickers coming to collect on a drug debt for cocaine Madrid kept in his home. Madrid has never challenged the factual basis for his guilty plea, so he cannot now claim that his conduct failed to satisfy § 924(c)'s elements. Because § 924(c) prohibits firearm possession only for unlawful purposes, it does not burden conduct protected by the Second Amendment's plain text.

Moreover, § 924(c) is consistent with America's historical tradition of firearm regulation. This Court has recognized that governments in England and colonial America long disarmed groups that they deemed dangerous. And this Court recently held in *United States v. Kimble*, 142 F.4th 308, 315 (5th Cir. 2025), that 18 U.S.C. § 922(g)(1) was constitutional as applied to a defendant who possessed a firearm after having been convicted of drug-trafficking felonies. In so doing the Court concluded that class-wide disarmament of those deemed dangerous accords with the nation's history and tradition.

10

*Kimble* recognized, and common sense suggests, that the coupling of drug dealing with firearms is dangerous and can lead to violence. Section 924(c)'s burden on the use of firearms for the unlawful purpose of drug trafficking is consistent with both the Second Amendment's text and historical tradition.

**ARGUMENT**

I.   **Madrid's challenge to the constitutionality of 18 U.S.C. § 924(c) is not cognizable on initial collateral review.**

In its order granting Madrid's motion for a certificate of appealability, the Court directed the parties to "address the cognizability of Madrid's challenge on initial collateral review." Order (doc. 34-2), at 2. Madrid, in his opening brief, addressed only whether the *decision* on which he relies, *Bruen*, applies retroactively on collateral review. As explained below, the government agrees with him on that point, but that is a separate question from whether Madrid's "challenge" —*i.e.*, the Second Amendment claim he brings— is cognizable when raised for the first time on initial collateral review. For the reasons explained below, it is not.

## Standard of Review

This Court reviews questions of law presented by a § 2255 motion de novo. *United States v. Reece*, 938 F.3d 630, 633 (5th Cir. 2019).

## Discussion

### A.    Background: *Heller* and *Bruen*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court held that the Second Amendment protects the right of "law-abiding, responsible citizens" to keep firearms in their homes for self-defense. *Heller* clarified that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* Instead, the Amendment protects "bearing arms for a lawful purpose," *id.* at 620 (quoting *United States v. Cruikshank*, 92 U.S. 542, 553 (1875)), including the "core lawful purpose of self-defense," *id.* at 630.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court considered whether the Second Amendment protects "an individual's right to carry a handgun for

self-defense outside the home." *Id.* at 10. *Bruen* struck down a New York law requiring residents to demonstrate a "proper cause" to obtain a license to publicly carry a handgun. *Id.* at 11. *Bruen* observed that the law "prevent[ed] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 71.

*Bruen* rejected the "two-step" framework adopted by most courts of appeals after *Heller* that "combine[d] history with means-end scrutiny." *Id.* at 17. And *Bruen* "reiterate[d]" the "standard for applying the Second Amendment." *Id.* at 24. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* Second, when a regulation burdens such conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

Applying this standard to the New York law in question, *Bruen* observed that it was "undisputed" that the petitioners—"two ordinary, law-abiding, adult citizens"—were "part of 'the people' whom the Second Amendment protects" and that "handguns are weapons 'in common use' today for self-defense." *Id.* at 31-32 (quoting *Heller*, 554 U.S. at 580, 627). And it observed that the Second Amendment's plain text did not draw a "home/public distinction,"

13

meaning that the text "presumptively guarantee[d] petitioners . . . a right to 'bear' arms in public for self-defense." *Id.* at 32. The Court then examined a variety of historical sources and determined that there was no American "tradition of broadly prohibiting the public carry of commonly used firearms for self-defense" or of "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id.* at 38-39.

### B.    The *Bruen decision* is retroactive on collateral review.

Madrid's conviction became final on October 12, 2021.[2] The Supreme Court issued *Bruen* after that, on June 23, 2022. So the first question is whether Madrid could even avail himself of the *Bruen* decision on collateral review despite his conviction being final; in other words, does *Bruen* apply retroactively? The government agrees with Madrid that it does.

A rule applies retroactively if it is either an "old" rule, *see Whorton v. Bockting*, 549 U.S. 406, 416 (1007), or a "[n]ew" rule that is "substantive," *Schiro v. Summerlin*, 542 U.S. 348, 351-52 (2004) emphasis omitted). *Bruen* held that the Second Amendment protects

---

[2] This Court dismissed Madrid's direct appeal on July 14, 2021. *United States v. Madrid*, 852 F. App'x 864 (5th Cir. 2021). Madrid did not file a petition for writ of certiorari, so his conviction became final 90 days later, on October 12, 2021. *Clay v. United States*, 537 U.S. 522, 527 (2003).

14

the right of "ordinary, law-abiding citizens" to "carry a handgun for self-defense outside the home." 597 U.S. at 10. It thus announced a "new" rule for purposes of collateral review because that holding was not "compelled by existing precedent," *Saffle v. Parks*, 494 U.S. 484, 488 (1990); *see Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion) (defining a new rule as one that "breaks new ground or imposes a new obligation" on the government). Although the *Bruen* Court said that it was simply "apply[ing]" the test that it had previously set forth in *Heller*, *Bruen*, 597 U.S. at 26, a rule can be "new" even if prior decisions "inform, or even control or govern, the analysis" so long as those decisions do not "compel the rule." *Sawyer v. Smith*, 497 U.S. 227, 236 (1990) (quotation marks omitted). And because *Heller* recognized only the right to possess "handguns . . . for self-defense in the home," 554 U.S. at 636, it did not *compel Bruen*'s holding that New York's licensing scheme for public carry was unconstitutional.

*Bruen*'s rule is also substantive when applied to statutes. Substantive rules include "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro*, 542 U.S. at 352. *Bruen* satisfies this definition because it held that the state lacked power to punish a law-abiding citizen for carrying a firearm in public for ordinary self-

15

defense. Because *Bruen* announced a new rule that is substantive, the decision applies retroactively on collateral review.

### C. Madrid's challenge to the constitutionality of § 924(c) is not cognizable on collateral review under 28 U.S.C. § 2255 and is otherwise barred.

#### 1. Madrid's Second Amendment challenge is procedurally barred.

In considering the extent to which "claims are cognizable under section 2255[,]" this Court has noted that "[f]ollowing a conviction and exhaustion or waiver of the right to direct appeal, [it] presumes a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Indeed, the reason the Supreme Court imported a procedural bar into § 2255 was "to ensure that such proceedings will not develop into a substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001).

Madrid never argued, either before the district court in his criminal case, or before this Court on direct appeal, that his § 924(c)

16

conviction was unconstitutional under the Second Amendment. He raised that claim for the first time in his supplement to his § 2255 motion. Accordingly, the claim is not cognizable unless Madrid can make the cause-and-prejudice showing.

To date, Madrid has not done so. But the government acknowledges that it did not assert the procedural bar before the district court in this § 2255 proceeding. Originally there was no basis for the government to do so. Madrid's initial § 2255 motion asserted only a single claim of ineffective assistance of counsel. Because ineffective-assistance claims automatically satisfy the cause-and-prejudice standard, *United States v. Patten*, 40 F.3d 774, 776 (5th Cir. 1994), the government did not raise the procedural bar in its written response to Madrid's § 2255 motion.

Around two-and-a-half *years* after the government filed its written response, Madrid, on June 1, 2024, sought leave to supplement his § 2255 motion with a *Bruen*-based constitutional claim. ROA.58-64. The magistrate judge granted Madrid's motion for leave on November 18, 2024, ROA.68, and, the very next day, entered a report and recommendation that Madrid's § 2255 motion, both the original motion and as supplemented, be denied, ROA.69-84.[3]

---

[3] Under the Eastern District of Texas's local civil rules, "[t]he time for filing any responsive documents" to a pleading filed with leave of court "run[s] from the date of the order on the motion for leave." E.D. Tex. L.R. CV-6(k). The

Perhaps the government could or should have taken the procedurally awkward step of objecting to the report and recommendation, even though it was favorable to the government, on the ground that the Second Amendment claim not only lacked merit but was procedurally barred (and as explained later, was barred by the collateral-review waiver and untimely to boot), but it did not.

But the government asserts the procedural bar now, and respectfully urges the Court to consider it. This Court has held that "a court may, *sua sponte*, invoke the procedural default rule as a bar to § 2255." *Willis*, 273 F.3d at 596. In so doing, the Court recognized that the "[procedural bar] defense to a § 2255 action . . . substantially implicates important concerns that transcend those of the parties to a case." *Id.* (quoting *Hines v. United States*, 971 F.2d 506, 508 (10th Cir. 1992)) (quotation marks omitted). In "considering whether to apply the procedural default rule *sua sponte*, '[t]he relevant concerns are whether the petitioner has been given notice that procedural default will be an issue for consideration, whether the petitioner has had a reasonable opportunity to argue against application of the bar, and whether the State intentionally waived the defense.'" *Id.* at 597 (quoting *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

---

government thus should have been allowed until December 2, 2024, to respond to Madrid's supplemental § 2255 claim, but the magistrate judge issued her report and recommendation 13 days before, on November 19, 2024.

Those concerns counsel in favor of consideration of the procedural bar here. First, Madrid has been given notice of the defense, most directly through the government's invocation of it in this brief. *Id.* (noting that "the government wisely raised the issue in its brief to this court" even though it hadn't raised the issue before the district court). Moreover, in its order granting Madrid's certificate of appealability, the Court directed the parties "to address the cognizability of Madrid's challenge on initial collateral review." Order at 2. This Court has described the procedural-bar rule as implicating cognizability. *Cervantes*, 132 F.3d at 1109. So Madrid also had an opportunity, in his opening brief, to address why his Second Amendment claim is cognizable on initial collateral review despite his failure to raise it earlier.

Second, Madrid will have ample opportunity to argue against application of the procedural bar in his reply brief. *Willis*, 273 F.3d at 597 (noting that the government's invocation of the bar gave appellant "further notice that his case may have been barred" and that the issue could have been, but was not, addressed in his reply brief).

Third and finally, the government in no way "intentionally waived" the defense. *Id.* As mentioned above, only one day passed between the time the magistrate judge granted Madrid leave to file

19

his supplemental § 2255 motion and the issuance of the report and recommendation that the motion be denied in its entirety. At most, the government forfeited an opportunity to raise the bar; it did not intentionally relinquish a known right to assert it.

Madrid cannot show cause for not raising his Second Amendment challenge on direct appeal.[4] He may argue that it would have been "futile" to do so before *Bruen* or that *Bruen* was so novel that his failure to raise the claim earlier should be excused. But the Supreme Court has stated that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotation marks omitted).

And although a claim that is so "novel that its legal basis [wa]s not reasonably available to counsel" at the time of appeal can constitute "cause" to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16-17 (1984), a text-and-history-based Second Amendment challenge to a federal firearms law does not meet that standard. Such a claim is not "novel" simply because *Bruen* recognized a "new rule" for retroactivity purposes. Instead, to demonstrate "cause" sufficient to overcome procedural default, a "new

---

[4] Madrid did not argue in the § 2255 proceeding, and does not argue now, that his attorney rendered constitutionally ineffective assistance by failing to raise a Second Amendment claim on his behalf.

retroactive decision" must also have announced a rule that was such a "clear break with the past" that "an attorney representing the defendant would not reasonably have had the tools for presenting the claim." *Hargrave v. Dugger*, 832 F.2d 1528, 1531 (11th Cir. 1987) (quoting *Reed*, 468 U.S. at 17).

The *Bruen* test was not novel. Before *Bruen*, courts regularly analyzed (and upheld) the constitutionality of federal firearms laws after *Heller*, sometimes considering whether the restriction fit within the historical tradition of gun regulation. *See, e.g.*, *Medina v. Whitaker*, 913 F.3d 152, 157-61 (D.C. Cir. 2019); *United States v. Bena*, 664 F.3d 1180, 1182-84 (8th Cir. 2011). And even in the circuits that applied the means-end scrutiny test that *Bruen* rejected, there were ample grounds on which defendants could have argued that the correct Second Amendment framework was based on history and tradition. *See, e.g.*, *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 714 F.3d 334, 338 (5th Cir. 2013) (Jones, J., dissenting) (opining that "the fundamental right to keep and bear arms is not itself subject to interest balancing"); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1271 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("In my view, *Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text,

21

history, and tradition, not by a balancing test such as strict or intermediate scrutiny.").

Nor could Madrid show that he is "actually innocent" of the § 924(c) offense on the ground that the statute is "unconstitutional." "'[A]ctual innocence' means factual innocence," *Bousley*, 523 U.S. at 623, as opposed to "legal" innocence, *Smith v. Murray*, 477 U.S. 527, 537 (1986). A prisoner may succeed on an actual-innocence claim where, for example, the prisoner can show that the Supreme Court has narrowed the scope of a federal statute such that the prisoner was convicted of "an act that the law does not make criminal." *Bousley*, 523 U.S. at 620 (quotation marks omitted). But the actual-innocence standard "is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quotation marks omitted).

Madrid cannot establish an actual-innocence claim based on *Bruen*. *Bruen* simply invalidated a state statute prohibiting public carry of firearms without good cause. In no sense did it establish the unconstitutionality of any federal-firearms law — let alone one that regulates the use or discharge of a firearm to further one's illegal drug dealing — with sufficient clarity that Madrid could make a "convincing[]" or "strong" showing that he is actually innocent of a crime. *See United States v. Morgan*, 230 F.3d 1067, 1070 (8th Cir.

2000) (rejecting claim of actual innocence where an intervening Supreme Court decision "no more than suggested" that the statute of conviction was unconstitutional and did not "clearly establish[]" that the prisoner's actions "do not constitute a crime"). Accordingly, Madrid's Second Amendment claim is not cognizable on initial collateral review. The Court's analysis can stop here.

> **2. *Madrid's Second Amendment challenge is barred by the collateral-review and appellate waiver in his plea agreement.***

Madrid's plea agreement with the government contained the following provision:

> 12. **WAIVER OF RIGHT TO APPEAL OR OTHERWISE CHALLENGE SENTENCE:** Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

ROA.487. As mentioned above, Madrid's original § 2255 motion asserted only an ineffective-assistance-of-counsel claim, so it fell within one of the listed exceptions to the collateral-review waiver. But

the *Bruen*-based Second Amendment challenge that Madrid later brought by way of his supplemental § 2255 motion did not rest on a claim of ineffective assistance of counsel; rather, it was a straight-up claim that the statute of conviction on count two — § 924(c) — was unconstitutional. It thus falls squarely within the collateral-review waiver in Madrid's plea agreement. It is of no matter that Madrid presents a constitutional claim, for an appeal or collateral-review waiver may be enforced to bar a constitutional claim just the same as a non-constitutional one. *See United States v. Barnes*, 953 F.3d 383, 385, 390 (5th Cir. 2020) ("Barnes's § 2255 motion [was] barred by his collateral-review waiver" where the motion raised a claim of unconstitutional vagueness); *id.* at 389 ("defendants can waive the right to challenge . . . unconstitutional sentences"); *see also United States v. Jones*, 134 F.4th 831, 835-38 (5th Cir. 2025) (finding that collateral-review waiver applied to bar prisoner's claim that his § 924(c) conviction should be vacated in light of the Supreme Court's holding in *United States v. Davis*, 588 U.S. 445 (2019), that § 924(c)'s residual clause is unconstitutionally vague).

Nor can Madrid argue that the waiver is unenforceable because he could not have foreseen the 2022 *Bruen* decision when he agreed to the waiver in 2019 or when he was sentenced in 2020. At the time Madrid agreed to the collateral-review waiver he "assumed the risk

24

that he would be denied the benefit of future legal developments." *Barnes*, 953 F.3d at 388 (quotation omitted).

And even if the collateral-review waiver does not apply, the *appeal* waiver does.[5] Madrid agreed to waive his right to appeal his conviction or sentence "on all grounds." ROA.486-87. By instituting this appeal of the district court's denial of his § 2255 motion, Madrid seeks to challenge his § 924(c) conviction on Second Amendment grounds. That claim is barred by the plain language of the appeal waiver Madrid agreed to, and this Court should enforce it and dismiss this appeal.

### 3. *Madrid's* Bruen-*based claim is time-barred.*

A § 2255 motion is timely if filed within one year of (as relevant here) "the date on which the judgment of conviction becomes final" or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. §§ 2255(f)(1), (3). Madrid did not move

---

[5] Madrid asserts that in ruling on his § 2255 motion the magistrate judge "held that [] Mr. Madrid had voluntarily waived his right to appeal his conviction when he signed the plea agreement[.]" Madrid Br. 4. While the magistrate judge did discuss the collateral-review/appeal waiver in Madrid's plea agreement, ROA.75-76, she determined that "Movant's claim against counsel is not waived" because Madrid "specifically reserved the right to assert claims of ineffective assistance of counsel." ROA.76. The magistrate judge did not address whether the waiver applied to the newly asserted Second Amendment claim.

for leave to supplement his § 2255 motion with a *Bruen*-based claim until June 2024, ROA.58-64, well over a year after both (1) his conviction became final in October 2021 and (2) *Bruen* was decided in June 2022.[6]

So Madrid's *Bruen*-based claim is untimely unless it relates back to his timely-filed original § 2255 motion. Fed. R. Civ. P. 15(c). Under Rule 15(c), an amendment relates back to a timely-filed claim when the newly asserted claim "arose out of the conduct, transaction, or occurrence set out" in the original filing. Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court explained in *Mayle v. Felix*, 545 U.S. 644 (2005), "that amendments do not relate back if they assert 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v. Gonzalez*, 592 F.3d 675, 679 (5th Cir. 2009) (quoting *Mayle*, 545 U.S. at 650).

Madrid's original § 2255 motion asserted only a single claim of ineffective assistance of counsel (alleging that his attorney had

---

[6] Because Madrid filed his motion for leave over a year after *Bruen* was decided, the Court need not decide, for purposes of § 2255(f)(3), whether *Bruen* recognized a new right that applies to these circumstances. In any event, it did not. "In this circuit, the habeas clock restarts only if the Supreme Court has addressed the *exact application* [of an issue] that would grant the prisoner relief." *United States v. London*, 937 F.3d 502, 509 (5th Cir. 2019) (Costa, J., concurring) (emphasis supplied). Because *Bruen* did not address "any new Second Amendment right in the context of criminality[,]" § 2255(f)(3)'s renewed one-year limitations period was never triggered in the first place. *See United States v. Barragan-Gutierrez*, 136 F.4th 998, 1003-05 (10th Cir. 2025).

promised him a lower sentence than the one he received). Yet in his supplemental § 2255 motion, Madrid asserted that the statute underlying his conviction on count two — § 924(c) — was unconstitutional under the Second Amendment. Under any reckoning, that was a new ground for relief that depended on facts (whether § 924(c) is consistent with the nation's "text, history, and tradition" of firearm regulation) that differed in time and type from whatever promises Madrid's attorney had allegedly made during the plea process. The *Bruen*-based claim is time barred, so this Court should affirm the district court's judgment. *Cf. Gonzalez*, 592 F.3d at 681 (noting that this Court "may affirm for any reason supported by the record, even if not relied on by the district court.").

## II.    Section 924(c)'s prohibition on possessing a firearm in furtherance of a drug-trafficking crime is consistent with the Second Amendment.

Even if Madrid's *Bruen*-based challenge to his § 924(c) conviction were cognizable on an initial § 2255 motion, not barred by the collateral-review/appellate waiver, and timely, it would fail on the merits. The Second Amendment's plain text, as historically understood and as interpreted by the Supreme Court, does not protect the right to possess firearms in furtherance of illegal activity. And § 924(c) is consistent with America's historical tradition of

27

firearm regulation, which includes many laws that prohibited the misuse of firearms or provided for enhanced sentences when firearms were possessed during other crimes. Section 924(c) is therefore valid both facially and as applied to Madrid.

## Standard of Review

This Court reviews the constitutionality of a federal statute de novo. *United States v. Kimble*, 142 F.4th 308, 310 (5th Cir. 2015).

## Discussion

### A. The Second Amendment's plain text does not protect the use or carriage of a firearm for unlawful purposes like drug trafficking.

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. It does not, as Madrid would have it, protect "the right of the people to keep and bear Arms *to facilitate one's illegal drug-trafficking business*." The Supreme Court has recognized that the right secured by the Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Both Supreme Court precedent and historical evidence bearing on the contemporary understanding of the Second Amendment make clear that it does not protect the unlawful conduct targeted by § 924(c).

28

*1. The Second Amendment protects the right to possess firearms only for lawful purposes.*

Nearly 150 years ago, the Supreme Court stated that the Second Amendment protects "bearing arms for a lawful purpose." *Cruikshank*, 92 U.S. at 553. *Heller* relied on *Cruikshank*'s description of the right when holding that the Second Amendment protects an individual right. *Heller*, 554 U.S. at 620 (observing that *Cruikshank* "described the right protected by the Second Amendment as 'bearing arms for a lawful purpose'"). In *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the Supreme Court confirmed that *Heller*'s "central holding" was "that the Second Amendment protects a personal right to keep and bear arms *for lawful purposes*, most notably for self-defense within the home." *Id.* at 780 (opinion of Alito, J.) (emphasis added). And *Bruen* reiterated the point, explaining that, "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing *the intent for which one could carry arms*, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Bruen*, 597 U.S. at 38 (emphasis added).

This lawful-purpose limitation is consistent with the Second Amendment's history. "[T]he Second Amendment was not intended to lay down a 'novel principl[e]' but rather codified a right 'inherited

29

from our English ancestors.'" *Heller*, 554 U.S. at 599 (quoting *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897)). The 1689 English Bill of Rights, which "has long been understood to be the predecessor to our Second Amendment," *id.* at 593, recited that King James II, who had been deposed in the Glorious Revolution, had disarmed "severall good subjects being Protestants," 1 W. & M., ch. 2, § 7, in Engl. Stat. at Large 441. To prevent repetition of that abuse, the Bill guaranteed that "the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law." *Id.* By condemning the disarming of "good subjects" while providing for limits on the right "as allowed by Law," the Bill signaled that it did not protect bearing arms for unlawful purposes. And the English Bill of Rights did not displace the Militia Act of 1662, which authorized local officials to disarm individuals they judged "dangerous to the Peace of the Kingdome." 14 Car. 2, c. 3, § 13; *see* Diarmuid F. O'Scannlain, *Glorious Revolution to American Revolution: The English Origin of the Right to Keep and Bear Arms*, 95 NOTRE DAME L. REV. 397, 405 (2019) (observing that enforcement of the Act "continued unabated" after the adoption of the Bill of Rights).

Similarly, the debates surrounding the Second Amendment's ratification indicate a shared understanding that it did not protect

the right to use firearms for criminal activity. Pennsylvania's ratifying convention proposed a bill of rights that forbade "disarming the people, or any of them, *unless for crimes committed, or real danger of public injury from individuals*." 2 *The Documentary History of the Ratification of the Constitution* (Documentary History) 598 (Merrill Jensen ed., 1976) (emphasis added). The Federalists defeated the proposal, but the Anti-Federalists published it in the Dissent of the Minority of the Convention, *id.* at 624, which was widely read and proved "highly influential," *Heller*, 554 U.S. at 604. At the Massachusetts ratifying convention, Samuel Adams proposed a bill of rights that would have denied Congress the power "to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms." 6 *Documentary History* 1453 (John P. Kaminski & Gaspare J. Saladino eds., 2000) (emphasis added). The convention rejected the proposal, but only because Adams had waited until the morning of the day of ratification to present it. Letter from Jeremy Belknap to Ebenezer Hazard (Feb. 10, 1788), in 7 *Documentary History* 1583 (John P. Kaminski & Gaspare J. Saladino eds., 2001). These proposals reflect a common understanding that the "pre-existing," "venerable," and "widely understood" right to keep and bear arms did not protect the right to use firearms to commit crimes. *Heller*, 554 U.S. at 603-05.

31

This lawful-purpose limitation is also consistent with how the Supreme Court has long interpreted other constitutional rights. For example, the First Amendment does not protect true threats, *see Counterman v. Colorado*, 600 U.S. 66, 74 (2023), or obscenity, *see United States v. Williams*, 553 U.S. 285, 288 (2008), even though they are a form of "speech." Although the First Amendment protects the right to peaceable assembly, it allows Congress to "proscribe picketing in furtherance of . . . unlawful objectives." *Int'l Bhd. of Elec. Workers, Loc. 501, A.F. of L. v. N.L.R.B.*, 341 U.S. 694, 705 (1951). And although the Constitution protects the right to interstate travel, the government can penalize interstate travel undertaken "with the intent to promote . . . unlawful activity." *United States v. Villano*, 529 F.2d 1046, 1055 (10th Cir. 1976); *cf. Aptheker v. Secretary of State*, 378 U.S. 500, 511 (1964) (indicating that the government cannot prohibit travel for a "wholly innocent purpose"). Thus, just as the Supreme Court does "not read the First Amendment to protect the right of citizens to speak for any purpose," it does "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation." *Heller*, 554 U.S. at 595.

Consistent with this understanding, several courts of appeals upheld § 924(c) after *Heller*, reasoning that "the Second Amendment does not safeguard the *unlawful* purpose of possessing a firearm in

32

furtherance of drug trafficking." *United States v. Bryant*, 711 F.3d 364, 365-66 (2d Cir. 2013). The Ninth Circuit explained that *Heller*'s holding "concerned the *lawful* possession and use of a firearm" and observed that "it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011). And the Seventh Circuit said that "[t]he Constitution does not give anyone the right to be armed while committing a felony" or "to have guns in the next room for emergency use should suppliers, customers, or the police threaten a dealer's stash." *United States v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009). Other circuits reached the same conclusion in unpublished opinions. *See Costigan v. Yost*, 334 F. App'x 460, 462 (3d Cir. 2009); *United States v. Frazier*, 314 F. App'x 801, 807 (6th Cir. 2008); *United States v. Thorton*, 395 F. App'x 574, 577 (11th Cir. 2010).

*Bruen* did not unsettle this unanimous precedent. Since *Bruen*, no court has held that § 924(c) violates the Second Amendment. And post-*Bruen* the Sixth Circuit has twice held in published opinions that the statute does not violate the Second Amendment. *See United States v. Underwood*, 129 F.4th 912, 929 (6th Cir. 2025) (holding that a defendant who violates § 924(c) "is specifically bearing arms to promote unlawful ends" and that such conduct "is, therefore, not the

type of conduct encompassed within the Second Amendment right."); *United States v. Risner*, 129 F.4th 361, 367-69 (6th Cir. 2025) (reaffirming that § 924(c) does not burden conduct — the use of a firearm during the commission of a drug-trafficking crime — that falls within the scope of the Second Amendment right as historically understood); *cf. Barragan-Gutierrez*, 136 F.4th at 1004 (noting that "[t]here is no indication that the Supreme Court in *Bruen* recognized any new Second Amendment right in the context of criminality.") (quotation marks omitted). And this Court and others have rejected *Bruen*-based challenges to § 924(c) convictions on plain-error review. *See United States v. Ruiz*, 2024 WL 1134725, *1 (5th Cir. March 15, 2024) (finding that it was not clear "that *Bruen* or other binding authority compel[led]" the conclusion that the defendant had a right to possess firearms in a residence where he stored and distributed methamphetamine); *United States v. Cash*, 2023 WL 6532644, *4 (3d Cir. Oct. 6, 2023) ("Because Cash possessed a firearm for the unlawful purpose of furthering his drug trafficking crimes, and courts have unanimously concluded that such conduct does not violate the Second Amendment, there was no plain error in entering judgment against Cash for violating § 924(c)(1)(A)(i).").

34

*2. Contrary to Madrid's claim, § 924(c) required proof —
and Madrid admitted under oath — that he discharged
a firearm during and in relation to his commission of a
drug-trafficking crime.*

Madrid attempts to sanitize the illegal conduct that he swore under oath he committed. To support his claim that the Second Amendment covers his conduct, Madrid says that he was penalized for simply "bearing (1) a common use firearm (2) in his home." Madrid Br. 16. But the § 924(c)(1)(A) offense that Madrid pleaded guilty to requires more; it requires that the defendant "use[]" or "carr[y]" a firearm "during and in relation to" a drug-trafficking crime. 18 U.S.C. § 924(c)(1)(A). And a 10-year mandatory minimum sentencing enhancement applies "if the firearm is discharged[.]" *Id.* at § 924(c)(1)(A)(iii).

Madrid admitted in his factual basis before the district court that he "discharged [an] AK-47 during and in relation to his possession with intent to distribute the cocaine, in which he owed money to the drug traffickers breaking into his house." ROA.231. But as Madrid would have it now on appeal, his factual basis did not contain facts at all but mere "contention[s]" and "suggestion[s]" of fact put forth by the government. Madrid Br. 2. But Madrid *signed* the factual basis, attesting that he "agree[d] without reservation that it accurately describes the events and my acts." ROA.232. Madrid now

35

insinuates, however, that he only consented to the facts in the factual basis under some sort of duress or coercion. Madrid Br. 2 ("As all defendants seeking a guilty plea must, Mr. Madrid consented to the Government's recitation of the facts."). That is absurd. In no sense are criminal defendants compelled to consent to the facts set forth in a written factual basis, no matter the draftsman. It should go without saying that a defendant should only agree that the facts included in the factual basis are accurate if they are, in fact, accurate. In any event, Madrid told the magistrate judge, under penalty of perjury, that "everything" in his factual basis was "true and correct." ROA.446, 462. To the extent he now suggests otherwise, "he should count himself lucky that he has not been prosecuted for perjury, 18 U.S.C. § 1621[.]" *Jackson*, 555 F.3d at 637.

The district court relied on Madrid's admissions when accepting his guilty plea. And those admissions were confirmed by unobjected-to facts in the presentence report. ROA.496-97. Having pleaded guilty to violating § 924(c), Madrid cannot now claim that all he did was bear and discharge a "common use firearm . . . 'in defense of hearth and home.'" Madrid Br. 16 (quoting *Heller*, 554 U.S. at 635).[7] "[A]

---

[7] Notably, Madrid cites no record evidence to support this statement. Rather, the record actually shows that Madrid admitted that he owed drug traffickers money for the very cocaine "that was currently located in Madrid's home." ROA.230. The factual basis gives no indication whatsoever that Madrid's drug creditors threatened violence against Madrid or were even armed, only that

valid guilty plea relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." *Class v. United States*, 583 U.S. 174, 183 (2018) (quotation omitted). And Madrid never sought to withdraw his plea, nor did he appeal on the basis that the district court failed to "determine that there [wa]s a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). What's more, in its order granting a certificate of appealability, this Court admonished that "[w]hile Madrid [] appears to argue that there was insufficient evidence in support of his § 924(c) conviction, we will not consider new issues raised for the first time in an application for a COA." Order (doc. 34-2), at 1-2.

---

they were "coming to collect the drug debt" and that Madrid intended to shoot them. ROA.230.

Not that Madrid's intent as to the discharge of the weapon matters. The "basic crime" that § 924(c) describes "is using or carrying a firearm during and in relation to a . . . drug trafficking crime[.]" *Dean v. United States*, 129 S.Ct. 1849, 1854 (2009). By pleading guilty, Madrid necessarily admitted that he committed that crime. ROA.463. The sentencing enhancement under § 924(c)(1)(A)(iii) applies if the firearm is discharged; proof of intent is not required. "As a matter of law, 'self-defense' is irrelevant to a section 924(c) violation.'" *United States v. Sloley*, 19 F.3d 149, 153 (4th Cir. 1994) (quoting *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991)); *see also United States v. Palumbo*, 468 F. App'x 751, 752 (9th Cir. 2012) (rejecting Second Amendment challenge to § 924(c) charge where defendant claimed he discharged gun "when his drug co-conspirators threatened him with a weapon in order to take the drugs."). Here, even though the government did not have to prove that Madrid discharged his AK-47 during and in relation to his drug-trafficking crime, Madrid admitted that he did. ROA.231.

In any event, when assessing § 924(c)'s constitutionality, this Court must consider the conduct that the statute actually proscribes, not the lesser conduct that Madrid now claims he committed. "[L]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects," and not those "for whom the law is irrelevant." *City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) (quoting *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 894 (1992) (plurality opinion)). Accordingly, courts considering constitutional challenges should ignore situations that "do not involve actual application of the statute." *Id*. at 419.

When considering what § 924(c) actually proscribes—the use, carrying, or discharge of a firearm during and in relation to a drug-trafficking crime—there can be little question that the statute prohibits conduct that is not protected by the Second Amendment's plain text.[8] Thus, Madrid's constitutional challenge fails at *Bruen*'s first step. *See Underwood*, 129 F.4th at 929; *Risner*, 129 F.4th at 367-69.

---

[8] Madrid asserts that "at least since *Heller*, the Second Amendment's plain text has covered—and protected—the conduct that Mr. Madrid was penalized for in this case." Madrid Br. 16. Unsurprisingly, he cites no case where any court has ever held that the Second Amendment's "plain text" protects the conduct for which Madrid was actually penalized: using and discharging a firearm to facilitate his drug trafficking. ROA.230.

**B.    Section 924(c)'s prohibition on firearm possession in furtherance of crimes of violence and drug-trafficking crimes is consistent with the historical tradition.**

Even if the Second Amendment's plain text protected possessing a firearm for unlawful purposes, § 924(c) would still be constitutional because it is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. In conducting the historical inquiry, courts consider whether the modern and historical regulations are "relevantly similar," focusing on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. The central questions are whether "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* The government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30. "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

Section 924(c) is consistent with historical laws punishing the use of firearms for unlawful ends. For example, the American colonies carried over the English common-law tradition of punishing and disarming those who used firearms in a threatening manner. In

39

England, this prohibition was codified by the 1328 Statute of Northampton, which provided that no person should "bring any force in affray of peace, nor go nor ride armed . . . upon pain to forfeit their armour to the king, and their bodies to prison at the king's pleasure." 2 Edw. 3, 258, ch. 3 (1328). English courts interpreted the law to prohibit not simply carrying weapons but doing so in a way that would "terrify the King's subjects." *Sir John Knight's Case*, 87 Eng. Rep. 75, 76 (K.B. 1686); *see* William Hawkins, 1 *Pleas of the Crown* 136 (1716) (explaining that "no wearing of Arms is within the meaning of this Statute, unless it be accompanied with such Circumstances as are apt to terrify the people").

The American colonies imported this common-law offense. At least four colonies or states "codified the existing common law" by adopting statutes that "prohibit[ed] bearing arms in a way that spreads 'fear' or 'terror' among the people."[9] *Bruen*, 597 U.S. at 49-50 & n.14. Three of those laws (all but North Carolina) specifically required forfeiture of the offender's weapons.[10] And justice-of-the-

---

[9] *See* Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12; Act for the Punishing Criminal Offenders, 1701 N.H. Laws 15; Act to Appoint Constables, ch. 5, § 2, 1741 N.C. Laws 47; Act Forbidding and Punishing Affrays, ch. 49, 1786 Va. Laws 35.

[10] *See* 1692 Mass. Laws at 12 (requiring officers to "take away his Armour or Weapons" and "cause them to be apprized and answered to the King as forfeited"); 1701 N.H. Laws at 15 (the justice of the peace "may . . . cause his Arms or Weapons to be taken away, and apprized and answered to His Majesty,

peace manuals published in at least three other colonies demonstrate that the common-law crime reflected in the Statute of Northampton had force even where not codified by statute.[11]

In the period surrounding the founding, many states or territories adopted laws providing for an enhanced penalty for burglary and robbery—usually the death penalty or forfeiture of the criminal's estate—where the perpetrator used violence or was armed with a "dangerous weapon."[12] *See Underwood*, 129 F.4th at 930 ("in the period surrounding the founding, many states . . . began to

___

as forfeited"); 1786 Va. Laws at 35 (offender would "forfeit his armour to the Commonwealth").

[11] *See* James Parker, *Conductor Generalis: Or, the Office, Duty and Authority of Justices of the Peace* 10-14 (printed in Woodbridge, N.J., in 1764; New York, N.Y. in 1788; and Philadelphia, Pa., in 1792).

[12] *See* Act for the Punishment of Burglary and Robbery, 1783 Conn. Laws 633 (increasing the penalty from whipping and up to ten years in jail to the death penalty); A Law Respecting Crimes and Punishments, ch. 6, *Laws Passed in the Territory of the United States North-West of the River Ohio* 19-21 (1792) (increasing the penalty from whipping and up to three years of "sureties for good behaviour" to forfeiture of one's entire estate and up to 40 years in jail); Act of Feb. 28, 1799, 1799 Miss. Laws 44-47 (increasing the penalty from whipping and up to three years of sureties to estate forfeiture and up to four years in prison); Act of March 13, 1806, §§ 1-2, 1806 Mass. Laws 121 (increasing the penalty from up to two years of "solitary imprisonment" to death); Act of Sept. 17, 1807, ch. 6, §§ 4-5, 1807 Ind. Laws 236-37 (increasing the penalty from whipping and up to three years of sureties to estate forfeiture and up to 40 years in jail); Act for the Punishment of Certain Crimes §§ 11-12, *Laws of the Territory of Louisiana: Comprising All Those Which are Now Actually In Force Within the Same* 308-09 (1808) (increasing the penalty from a fine and up to one year in prison to the pillory and up to seven years in prison); Acts of Feb. 23 and Mar. 19, 1821, ch. 6, §§ 1-2, ch. 7, §§ 7-8, 1821 Maine Laws 58-59, 62 (increasing the penalty from "hard labor for life" to "the punishment of death").

provide for enhanced punishment for crimes committed while the perpetrator was armed with a deadly weapon.") (citing An Act for the Punishment of Burglary and Robbery, 1783 Conn. Laws 633 & A LAW respecting CRIMES and PUNISHMENTS, 1799 Miss. Laws 44-47); *United States v. Greeno*, 679 F.3d 510, 519 (6th Cir. 2012) ("In the Eighteenth and Nineteenth Centuries, numerous states separately penalized, or increased the severity of punishment for, crimes committed by individuals who used a weapon during the commission of a crime.").

Several states in the early republic adopted laws punishing anyone possessing "any pistol . . . or other offensive weapon, with intent to assault any person."[13] And from the mid-1800s onward, many states and territories enacted laws that punished displaying a pistol or other deadly weapon in a "rude, angry, or threatening manner" (or similar language) for reasons other than self-defense.[14]

---

[13] Act of June 10, 1799, ch. 806, § 2, 1798 N.J. Laws 562; *see also* Act of Jan. 6, 1810, ch. 138, § 7, 1809 Md. Laws 92 (same, requiring intent "feloniously to assault"); Act of Dec. 20, 1817, 7th div., § 18, 1817 Ga. Laws 120 (same as Maryland act); Act of Aug. 1, 1827, 11th div. § 134, 1826 Ill. Laws 152 (same as Maryland act).

[14] *See, e.g.*, Act of May 13, 1837, § 9, 1837 Miss. Laws 292; Act of Apr. 28, 1854, ch. 2, § 30, 1854 Wash. Laws 80; Act of May 5, 1855, § 1, 1855 Cal. Laws 268; Act Concerning Crimes and Punishments, § 40, 1864 Idaho Laws 304; Act of Sep. 30, 1867, § 1, 1867 Ariz. Laws 21; Act of Mar. 4, 1873, § 1, 1873 Nev. Laws 118; Act of Apr. 17, 1877, § 1, 1877 Mo. Laws 240; Act of Mar. 4, 1882, § 1, 1882 Wyo. Laws 174; Act of Mar. 12, 1885, § 1, 1885 Mont. Laws 74-75; see also Act of Oct. 26, 1866, ch. 61, § 1, 1866 Tex. Laws. 60 ("so as to disturb the inhabitants of

"Thus, seemingly, the founders anticipated the regulation of firearms insofar as it involved prohibiting people from using them to engage in criminal activity." *Underwood*, 129 F.4th at 930. Section 924(c) fits comfortably within this historical tradition of prohibiting the use or possession of firearms for unlawful purposes. Like the statutes mentioned above, § 924(c) provides for additional punishment where a person possesses a gun while committing a crime. *See Cash*, 2023 WL 6532644, at *4 n.9 (observing that § 924(c) and historical statutes use "identical means—enhanced criminal penalties—and impose a comparably minimal burden on the 'right of armed self-defense'"). And § 924(c) requires that the firearm be possessed "in furtherance" of or used or carried "during and in relation to" the crime of violence or drug-trafficking crime, whereas some historical laws punished "mere possession of a firearm during the commission of certain crimes." *United States v. Alaniz*, 69 F.4th 1124, 1130 (9th Cir. 2023) (upholding Sentencing Guidelines § 2D1.1(b)(1)'s enhancement for possessing a dangerous weapon during a felony drug offense); *see supra* n.11.

---

the [public] place"); Act of July 23, 1868, § 13, 1868 Ark. Laws 218 ("for the purpose of frightening him or them from doing or attempting to do any lawful act"); Act of Jan. 29, 1869, § 4, 1869 N.M. Laws 73 ("in a threatening manner at or towards another"); Act of Mar. 13, 1875, § 1, 1875 Ind. Laws (Special Session) 62 ("draw or threaten to use"); Act of May 24, 1879, § 1, 1879 Ill. Laws 115 ("in a threatening manner display").

Section 924(c) and these historical statutes are also "comparably justified." *Bruen*, 597 U.S. at 29. The historical laws sought to "address the risk of violence that arises when a firearm is present during the commission of certain crimes." *Cash*, 2023 WL 6532644, at *4 n.9. There was, for example, a greater risk of violence where the perpetrator possessed a firearm during a robbery or burglary. And some historical statutes sought to prevent the "fear" or "terror" caused by the display of a firearm. *Bruen*, 597 U.S. at 50 (quotation omitted); *see supra* nn.9, 13; *McLaughlin v. United States*, 476 U.S. 16, 17-18 (1986) ("[T]he display of a gun instills fear in the average citizen.").

Congress, in enacting § 924(c), sought to serve the same goals of preventing violence and fear. Indeed, in *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025), this Court recently recognized that "[t]he Second Amendment allows Congress to disarm classes of people it reasonably deems dangerous[.]" Id. at 314-15. *Kimble* involved a defendant who was convicted of possessing a gun after having been convicted of two drug-trafficking felonies, in violation of 18 U.S.C. § 922(g)(1). The Court explained that "[l]ike legislatures in the past that sought to keep guns out of the hands of potentially violent individuals, Congress today regards felon drug traffickers as too dangerous to trust with weapons." *Id.* at 316.

And if that is true for those who possess guns after having been convicted of drug-trafficking felonies in the past, so much the more is it true for those who possess guns "during and in relation to" their *ongoing* drug trafficking. *See e.g.*, *United States v. Harper*, 766 F.3d 741, 746 (7th Cir. 2014) ("[T]he possession of a firearm by a felon in the context of another offense such as drug trafficking is inherently more dangerous than mere possession absent such activity."). *Kimble* surveyed the expansive case law recognizing the dangers that ensue when drug dealing and guns are mixed. *E.g.*, *Kimble*, 142 F.4th at 316-17 & n.17 ("The Supreme Court has long recognized 'that drugs and guns are a dangerous combination.'") (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)); ("This circuit has also credited testimony that 'drugs and guns are commonly found together and that drug dealers use guns to protect their business because of the inherent violence of the trade.'") (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 202 (5th Cir. 2008) (emphasis added by *Kimble*)); ("Other circuits have similarly acknowledged that 'drug dealing is notoriously linked to violence.'") (quoting *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2013)).

To reinforce the point that drug dealing and firearms are inherently dangerous in the context of § 922(g)(1), *Kimble* looked the legislative history of none other than § 924(c). *Id.* at 317. The Court

explained that Congress added the term "drug trafficking crime" to § 924(c) in 1986[15] at the request of the White House "in light of the fact that criminals involved in drug trafficking may often carry or use firearms during the commission of drug-related felonies." *Id.* (quoting Lynn Marsella, *Something About Carry: Supreme Court Broadens the Scope of 18 U.S.C. § 924(c)*, 89 J. CRIM. L. & CRIMINOLOGY 973, 975 (1999) (quotation omitted)). The Court thus noted that "the Legislative, Executive, and Judicial Branches agree that drug trafficking is an inherently dangerous activity" and that Congress did not violate the Second Amendment in responding to that threat "by disarming convicted drug traffickers via § 922(g)(1)." *Id.* So too with § 924(c).

---

[15] Despite Madrid's argument otherwise, Madrid Br. 17-18, that § 924(c) is a relatively modern statute is of no moment. "This argument is a nonstarter because requiring 'regulations identical to ones that could be found in 1791' is just 'as mistaken as applying the protections of the [Second Amendment] only to muskets and sabers.'" *United States v. Moore*, 2024 WL 3629416, *5 (3d Cir. April 16, 2024) (quoting *United States v. Rahimi*, 602 U.S. 680, 739 (2024)). "Drug trafficking itself is a largely modern crime." *Alaniz*, 69 F.4th at 1129. And *Bruen* recognized that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791" and that the Second Amendment allows for "regulations that were unimaginable at the founding." *Bruen*, 142 S. Ct. at 2132. And as Justice Barrett explained in her *Rahimi* concurrence, to demand "overly specific analogues" improperly "forces 21st-century regulations to follow late-18th-centrury policy choices" and incorrectly "assumes that founding-era legislatures maximally exercised their power to regulate." *Rahimi*, 144 S.Ct. at 1925 (Barrett, J., concurring).

*Kimble* essentially forecloses Madrid's Second Amendment challenge to § 924(c), whether on its face or as applied to Madrid. Madrid makes much of the fact that he discharged his AK-47 for self-protection while he was at home. But the Supreme Court, in *Rahimi*, recognized that the Court had "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." *Rahimi*, 602 U.S. at 683. And *Rahimi* relied on historical laws regulating the public carry of firearms to uphold § 922(g)(8)'s application to a defendant's "in-home firearms possession." *Id.* at 682-83.

Moreover, "the [Supreme] Court said in *Heller* that the Constitution entitles citizens to keep and bear arms for the purpose of *lawful* self-protection, not for *all* self-protection." *Jackson*, 555 F.3d at 636. The record shows that Madrid kept his cocaine stash, packaged for distribution, at his home, along with digital scales and a money counter. ROA.230-31. "[H]is decision to operate an illegal home business [] matters." *Id.* For that is also where he kept his store of firearms to protect not only his drugs but himself from the very scenario that unfolded — to ward off suppliers coming to collect on a drug debt. Congress forbade the use or carriage of a gun while one is engaged in drug trafficking to prevent these exact types of situations from occurring. It's not as if Madrid's creditors could seek recourse in

the courts. Congress recognized that drug suppliers will likely resort to self-help to collect on a debt, which could lead to violence. By the same token, drug debtors like Madrid "can't turn to the police for help; this makes dealers especially attractive targets." *Id.* Madrid's situation thus encapsulated the dangers that inhere when drug dealing and firearms are combined. Regulation of such conduct is consistent with the Nation's historical tradition. *Cf. Kimble*, 142 F.4th at 318 (holding that the defendant's "predicate convictions for drug trafficking convey that he belongs to a class of dangerous felons that our regulatory tradition permits legislatures to disarm.").

## CONCLUSION

The Court should affirm the judgment of the district court.

Respectfully submitted,

Jay R. Combs
United States Attorney
Eastern District of Texas

/s/ *Bradley Visosky*
Bradley Visosky
Assistant U.S. Attorney
101 E. Park Blvd., Suite 500
Plano, Texas 75074
Telephone: (972) 509-1201

Attorneys for the United States

48

## **Certificate of Service**

I certify that on December 18, 2025, a copy of this brief was served on counsel for the appellant through use of the Court's CM/ECF system.

/s/ *Bradley Visosky*
Bradley Visosky

## **Certificate of Compliance**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 11,355 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It was prepared using Microsoft Word 2010 in a proportionally spaced typeface in 14-point size, with footnotes in 12-point size.

/s/ *Bradley Visosky*
Bradley Visosky