No. 25-40161

# In the
# United States Court of Appeals
# for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

v.

ANTHONY JAMES MADRID,

*Defendant-Appellant*

On Appeal from the United States District Court
for the Eastern District of Texas
No. 1:21-CV-507

## Reply Brief of Appellant

T. Peyton Smith
Damonta D. Morgan
FORMAN WATKINS & KRUTZ LLP
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201
peyton.smith@formanwatkins.com
damonta.morgan@formanwatkins.com

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES.........................................................................ii

SUMMARY OF THE ARGUMENT ...........................................................1

STANDARD OF REVIEW...........................................................................4

ARGUMENT ...............................................................................................4

I. AS A MATTER OF FIRST PRINCIPLES, 18 U.S.C. § 924(c) VIOLATES THE SECOND AMENDMENT AS APPLIED TO MR. MADRID...............................................................................................4

   A. The Second Amendment's text and history cover Mr. Madrid's conduct...5

   B. The Government's out-of-circuit cases suffer from the same analytical flaws inherent in the Government's own argument.....................................11

II. MR. MADRID'S SECOND AMENDMENT CLAIM IS NOT PROCEDURALLY BARRED, WAIVED, OR UNTIMELY. ............15

   A. This Court should not entertain the Government's eleventh-hour procedural default argument.........................................................................15

   B. Cause and prejudice and, independently, actual innocence excuse any procedural default, anyway. ........................................................................19

   C. Mr. Madrid's claim is neither waived nor untimely. ...............................22

CONCLUSION .........................................................................................25

CERTIFICATE OF SERVICE....................................................................26

CERTIFICATE OF COMPLIANCE..........................................................27

# TABLE OF AUTHORITIES

**Cases**

*Blackledge* v. *Perry*, 417 U.S. 21 (1974) .................................................24

*Class* v. *United States*, 583 U.S. 174 (2018) ...........................................23

*District of Columbia* v. *Heller*, 554 U.S. 570 (2008) ...........................2, 7

*Garza* v. *Idaho*, 586 U.S. 232 (2019) ......................................................23

*Hughes* v. *Quarterman*, 530 F.3d 336 (5th Cir. 2008) ..........................21

*Menna* v. *New York*, 423 U.S. 61 (1975) ................................................24

*Murray* v. *Carrier*, 477 U.S. 478 (1986) ...........................................16, 21

*National Rifle Ass'n of America, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012)........................20

*New York State Rifle & Pistol Ass'n* v. *Bruen*, 597 U.S. 1 (2022) .. *passim*

*Teague* v. *Lane*, 489 U.S. 288 (1989).......................................................3

*United States* v. *Allen*, 918 F.3d 457 (5th Cir. 2019)........................17, 19

*United States* v. *Baymon*, 312 F.3d 725 (5th Cir. 2002) .........................23

*United States* v. *Bryant*, 711 F.3d 364 (2d Cir. 2013)............................20

*United States* v. *Clark*, 852 F. App'x 812 (5th Cir. 2021) ......................22

*United States* v. *Connelly*, 117 F.4th 269 (5th Cir. 2024)............. 7, 13, 14

*United States* v. *Davis*, 588 U.S. 445 (2019) .........................................22

*United States* v. *Diaz*, 116 F.4th 458 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025)............................................................................6, 13

*United States* v. *Gibson*, 356 F.3d 761 (7th Cir. 2004)...........................25

*United States* v. *Greeno*, 679 F.3d 510 (6th Cir. 2012)..........................13

*United States* v. *Griffith*, 522 F.3d 607 (5th Cir. 2008)........................17

*United States* v. *Guerra*, 94 F.3d 989 (5th Cir. 1996)......................20, 21

*United States* v. *Jackson*, 555 F.3d 635 (7th Cir. 2009) ...................12, 20

*United States* v. *Jones*, 565 U.S. 400 (2012) ..........................................16

*United States* v. *Kimble*, 142 F.4th 308 (5th Cir. 2025) ................. *passim*

*United States* v. *Leal*, 933 F.3d 426 (5th Cir. 2019) ..............................24

*United States* v. *Mix*, 791 F.3d 603 (5th Cir. 2015) .........................16, 17

*United States* v. *Potter*, 630 F.3d 1260 (9th Cir. 2011)..........................20

*United States* v. *Rahimi*, 602 U.S. 680, 740 (2024) .........................10, 14

*United States* v. *Reece*, 938 F.3d 630 (5th Cir. 2019), *as revised* (Sept. 30, 2019)................................................................................................22

*United States* v. *Riojas*, 139 F.4th 465 (5th Cir. 2025).........................23

*United States* v. *Risner*, 129 F.4th 361 (6th Cir. Feb 21, 2025) .......13, 14

*United States* v. *Robinson*, 323 Fed. Appx. 340 (5th Cir. 2009).......20, 21

*United States* v. *Underwood*, 129 F.4th 912 (2025).........................13, 14

*United States* v. *Valas*, 40 F.4th 253 (5th Cir. 2022)...............................4

*United States* v. *Willis*, 273 F.3d 592 (5th Cir. 2001) .............................. 18

**Statutes**

18 U.S.C. § 924(c)(1)(A) .................................................................. *passim*

28 U.S.C. § 2255 .................................................................. 4, 15, 18, 23

**Constitutional Provisions**

U.S. Const. amend. II ............................................................................. 8

**SUMMARY OF THE ARGUMENT**

This case presents a narrow but consequential question under *Bruen*: whether Congress may impose a mandatory, consecutive firearm penalty on conduct occurring inside the home without any Founding-era analogue authorizing such regulation. Under *New York State Rifle & Pistol Ass'n* v. *Bruen*'s text-and-history test, the answer is no. *See generally*, 597 U.S. 1 (2022). Whatever Congress's policy objectives, the Second Amendment permits firearm regulation only where it is consistent with the Nation's historical tradition. Because the Government cannot make that showing here, 18 U.S.C. § 924(c)(1)(A)(iii) is unconstitutional as applied to Mr. Madrid.

The Government largely sidesteps the central feature of this case: that the challenged conduct occurred inside Mr. Madrid's home in response to an apparent threat. It suggests that Mr. Madrid's argument conflicts with the factual basis of his plea, but the record refutes that suggestion. The factual basis establishes that Mr. Madrid observed multiple individuals wearing ski masks rushing toward his front door. Nothing in the record contradicts the common-sense inference that such circumstances would cause a reasonable person to fear for his safety and

that of his family.  Nor does the factual basis need to establish fear or self-defense to support guilt under § 924(c).  Mr. Madrid does not dispute that his conduct satisfied the statute's elements; he argues that the statute exceeds the Government's constitutional authority as applied to him.

The Government's position effectively treats criminal liability as a forfeiture of constitutional rights.  It implies that individuals engaged in unlawful activity lose the right to armed self-defense—even in their own homes.  The Second Amendment does not admit of such a rule. The Supreme Court has emphasized that the home is "where the need for defense of self, family, and property is most acute." *District of Columbia* v. *Heller*, 554 U.S. 570, 628 (2008).  Yet the Government identifies no Founding-era law imposing a separate, mandatory punishment for possessing or discharging a firearm in the home, let alone one triggered by broadly defined predicate conduct.

Properly applied, *Bruen* resolves this case.  The Second Amendment protects the right of "the people" to keep and bear arms.  The Supreme Court has affirmed that that term encompasses all members of the political community, not a favored subset.  *Heller*, 554 U.S. at 580.  Once

conduct falls within that textual guarantee, the burden shifts to the Government to identify a Founding-era analogue regulating firearms in a relevantly similar way, sharing both the same "how and why." The Government cannot meet that burden. There is no historical tradition of imposing a freestanding, mandatory, consecutive punishment solely for firearm use connected to a broadly defined offense, and none authorizing such punishment for non-violent conduct or conduct occurring in the home. Because the Government cannot identify any historical analogue supporting this application of § 924(c), the statute fails *Bruen*'s test as applied to Mr. Madrid.

The procedural posture of this case does not alter that conclusion. The Government agrees that *Bruen* announced a substantive change in Second Amendment law, and substantive constitutional rules are cognizable on collateral review. *See Teague* v. *Lane*, 489 U.S. 288 (1989). The Government's procedural objections—default, waiver, and timeliness—were not raised below and are forfeited. In any event, they fail on the merits: Mr. Madrid raised his Second Amendment claim at his first meaningful opportunity; appellate waivers cannot insulate statutes that exceed the Government's constitutional authority; and

established exceptions to procedural default apply.

This Court need not decide whether § 924(c) is unconstitutional in all its applications. It need decide only whether Congress may impose this mandatory firearm penalty on conduct occurring in the home without historical support. Under *Bruen*, it may not. The judgment below should therefore be reversed.

## STANDARD OF REVIEW

On appeal from the denial of a 28 U.S.C. § 2255 motion, this Court reviews *de novo* the district court's legal determinations and its factual findings for clear error. *United States* v. *Valas*, 40 F.4th 253, 257 (5th Cir. 2022).

## ARGUMENT

**I.  AS A MATTER OF FIRST PRINCIPLES, 18 U.S.C. § 924(c) VIOLATES THE SECOND AMENDMENT AS APPLIED TO MR. MADRID.**

The Government's response does not engage the Second Amendment on its own terms. Instead of grounding its defense of § 924(c) in constitutional text and history—as *Bruen* now unequivocally requires—the Government relies on pre-*Bruen* precedent asserting that the Second Amendment protects firearms possession only for "lawful

4

purposes." Appellee's Br. 29 (emphasis added). That limitation, however, appears nowhere in the Amendment's text and cannot be squared with this Court's post-*Bruen* jurisprudence.

As this Court recently explained, the Government's "lawful-purpose" theory proves far too much: if accepted, "Congress could outlaw the possession of any quotidian object and then claim that all those caught possessing it lose their Second Amendment rights forever." *United States* v. *Kimble*, 142 F.4th 308, 314 (5th Cir. 2025). The Constitution does not permit such an inversion of fundamental rights. *Id*. at 312 (5th Cir. 2025) ("the Second Amendment is not 'a second-class right'") (citing *Bruen*, 597 U.S. at 70). This Court should therefore reject the Government's invitation to rewrite the Second Amendment and instead apply the framework the Supreme Court has prescribed. When that framework is faithfully applied, § 924(c) cannot be sustained as applied to Mr. Madrid.

### A. The Second Amendment's text and history cover Mr. Madrid's conduct.

The Government agrees that *Bruen* established a new analytical framework for evaluating Second Amendment claims, *see* Appellee Br. at 17, but the Government's analysis falls short of faithful application of

that framework.  Under *Bruen,* courts must first ask whether the Second Amendment's text covers the conduct at issue.  597 U.S. at 24.  If it does, the conduct is presumptively protected, and the burden shifts to the Government to demonstrate that the challenged regulation is consistent with the Nation's historical tradition of firearm regulation.  *Id.*  The Government does not carry that burden here.

Rather than undertaking the required textual and historical inquiries, the Government leans on pre-*Bruen* cases decided on the basis of interest balancing and means-ends scrutiny and on historical references that are neither analogous nor relevant.  That approach is foreclosed by *Bruen* itself and by this Court's subsequent decisions explaining that reliance on pre-*Bruen* precedent is insufficient where that precedent rested on analytical frameworks *Bruen* expressly rejected. *See, e.g., United States* v. *Diaz,* 116 F.4th 458, 465 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 2822 (2025) (holding that *Bruen* "rendered our prior precedent obsolete"); *Kimble,* 142 F.4th at 311 (explaining that *Bruen* "abrogated our precedents" that categorically upheld federal firearm regulations).  Each as-applied challenge requires a fresh inquiry into the specific conduct regulated and the historical justification offered.  *Kimble,*

142 F.4th at 311.

*Text*.  Mr. Madrid is among "the people" protected by the Second Amendment, and the Government cannot argue otherwise.  Since *Bruen*, this Court has reaffirmed *Heller*'s text-and-history based conclusion that "the people" "unambiguously refers to all members of the political community, not an unspecified subset."  *United States* v. *Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) (quoting *Heller*, 554 U.S. at 580).  Unable to marshal a non-frivolous textual argument to the contrary, the Government attempts to side-step this portion of the *Bruen* analysis entirely by inserting a "lawful-purpose limitation" into the Second Amendment.  Appellee Br. at 29.  But as Mr. Madrid has already explained, that limitation finds no footing in the constitutional text and has been rejected on originalist grounds by the Supreme Court and several courts of appeals.  *See* Opening Br. 15 (collecting authorities).

Confronted with the weight of pre- and post-*Bruen* caselaw confirming that "the people" means what it says, the Government resorts to tales of disarming Protestants and restrictions on speech to argue for additional restrictions on the Second Amendment.  *See* Appellee Br. at 30–32.  But *Bruen* rejected just those kinds of entreaties, insisting

instead that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *See Bruen*, 597 U.S. at 18, 24. And that text it clear: It says, "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. It does not say "the right of *law-abiding citizens* to keep and bear arms *for lawful purposes*."

*History*. The Government's argument at *Bruen*'s second step does not fare any better. The Government does not meaningfully engage with the historical evidence Mr. Madrid presented demonstrating that nothing resembling § 924(c) existed at the Founding. Nor does it affirmatively identify any Founding-era laws that imposed a freestanding, mandatory punishment for firearm possession triggered by broadly defined predicate offenses. The Government's closest Founding-era analogy is a set of statutes that imposed enhanced punishment for armed burglary or armed robbery. *See* Appellees Br. at 41–43. But as Mr. Madrid explained in his Opening Brief, these laws are fundamentally dissimilar to § 924(c) in their mechanics and scope. *See* Opening Br. at 21–24.

At the Founding, when legislatures increased punishment based on the presence of a weapon, they did so in a limited and targeted way—and

they did not aim the punishment at the firearm itself. The use of a weapon was integrated into the definition of the substantive offense, typically a violent offense such as robbery or burglary. A statute might define a distinct offense (for example, robbery "while armed") or elevate the seriousness of the underlying crime. In each instance, the aggravation was tied to the inherently violent character of the offense itself. The weapon-related circumstance was part of what the Government had to prove, and it shaped the elements of the crime, the required mental state, and the proof at trial.

Section 924(c) works in a fundamentally different way. It does not define a crime or change the elements of an existing one. Instead, it operates as a standalone sentencing add-on that applies across the federal criminal code to a wide range of predicate offenses, both violent and non-violent. Once triggered, § 924(c) automatically imposes an extra, mandatory sentence aimed specifically at the firearm-related conduct, layered on top of the punishment for the underlying crime, regardless of how that crime is defined. As a result, the Government applies § 924(c) indiscriminately to violent offenses such as murder, robbery, or kidnapping and to non-violent offenses such as the possession-with-

9

intent-to-distribute offense at issue here.

Those differences matter because they alter the "how" for purposes of the *Bruen* analysis. *See Bruen*, 597 U.S. at 29 (requiring that analogues share the same "how and why"). Historically, the use of a weapon upped the seriousness of a single, violent offense; it did not create a separate punishment layered on afterward. Section 924(c), by contrast, imposes an additional penalty that targets the act of possessing or using a firearm itself, regardless of whether the underlying crime is an inherently violent one. Because *Bruen* requires courts to compare how a modern law operates with how historical laws operated, these structural differences defeat the Government's analogy. And the Government does not even attempt to justify why those crucial differences should be ignored under a faithful application of *Bruen* and *Rahimi*.

The Government's answer on the "why" is a stretch, too. It characterizes the purpose of Founding-era armed robbery laws at too high a level of generality—addressing the "risk of violence" when weapons are present during crimes. Appellee's Br. at 44. But *Bruen* forbids precisely this kind of abstraction. *See United States* v. *Rahimi*, 602 U.S. 680, 740 (2024) (Barrett, J., concurring). Indeed, if that were

sufficient, Congress could criminalize firearm possession in connection with *any* offense. The Founders did not adopt an Amendment that permits such sweeping disarmament by indirection, and this Court should not write it in. The Government's task here was more precise; it was required to put forth Founding-era laws that sought to "address [] the use and sale of addictive drugs." *Kimble*, 142 F.4th at 313 (discerning the purpose of the modern-day drug trafficking laws). It has not done so. Under *Bruen*, that failure is dispositive.

**B. The Government's out-of-circuit cases suffer from the same analytical flaws inherent in the Government's own argument.**

Unable to supply adequate historical analogues, the Government turns to out-of-circuit decisions that either precede or misapply *Bruen*'s framework. None of these cases can carry the day.

*Pre-***Bruen** *Cases.* The Government relies on a series of pre-*Bruen* cases in which courts of appeals upheld § 924(c) against Second Amendment challenges. *See* Appellee's Br. 32–33. Those decisions, however, rested on the very means–end scrutiny *Bruen* unequivocally repudiated. More fundamentally, none identified Founding-era regulations "relevantly similar" to § 924(c) in the sense *Bruen* demands.

11

Most undertook little or no historical inquiry at all. *See, e.g., United States* v. *Jackson*, 555 F.3d 635 (7th Cir. 2009). Because *Bruen* displaced that analytical approach, these decisions cannot supply—either directly or by analogy—the historical justification the Government must now provide.[1]

The Government argues to the contrary that "*Bruen* did not unsettle this unanimous precedent." Appellee's Br. at 33. But *Bruen* holds otherwise. Before *Bruen*, courts upheld § 924(c) by balancing the asserted governmental interest in public safety against the perceived burden on the right to keep and bear arms. *Bruen* expressly displaced that test. As a result, decisions that upheld firearm regulations because they served important governmental interests—without identifying Founding-era historical analogues—no longer answer the constitutional question *Bruen* requires courts to ask. And decisions that are analytically infirm on their own do not become less so simply because other courts committed the same error. After all, *Bruen* itself displaced

---

[1] The Government also cites the Third Circuit's unpublished decision in *United States* v. *Cash*, 2023 WL 6532644 (3d Cir. 2023) as support for its position that post-*Bruen* courts have also upheld 924(c). But *Cash* suffers from the same problem that these pre-*Bruen* decisions are afflicted with: it does not apply the *Bruen* standard. Indeed, *Cash* relies on a number of those cases to resolve the question. *See Cash*, 2023 WL 6532644, at *4.

a standard that was similarly "unanimous." That's why this Court has recognized that *Bruen* "rendered our prior precedent obsolete" where that precedent relied on means–end scrutiny. *Diaz*, 116 F.4th at 465.

**Risner *and* Underwood**. Next, the Government suggests that the Sixth Circuit's decisions in *United States* v. *Risner*, 129 F.4th 361 (6th Cir. Feb 21, 2025), and *United States* v. *Underwood*, 129 F.4th 912 (2025), support its position that 924(c) does not violate the Second Amendment. But these cases only illustrate the analytical deficiencies in the Government's own argument. In *Risner*, the court largely attempted to revive its pre-*Bruen* precedent rather than conduct the analysis *Bruen* requires. The court did not ask whether the Government had identified a "relevantly similar" historical analogue sharing the same "how and why." Instead, it framed the inquiry at a high level of generality, asking whether "the Second Amendment's right protected the possession of weapons by individuals engaged in criminal activity." *Risner*, 129 F.4th at 367–68 (quoting *United States* v. *Greeno*, 679 F.3d 510, 519 (6th Cir. 2012)).

This Court has rejected both premises. In *Connelly*, this Court reaffirmed that "all members of the political community" fall within "the

13

people" protected by the Second Amendment. 117 F.4th at 274. And in *Kimble,* it cautioned against precisely the kind of generalized "why" divorced from the specific operation of the challenged law that *Risner* champions. 142 F.4th at 314. As such, *Risner* conflicts with both holdings.

*Underwood* suffers from the same defects. There, too, the court writes "lawful purpose" into the text of the Second Amendment. *See Underwood,* 129 F.4th at 929 (holding that the Second Amendment does not cover persons "bearing arms to promote unlawful ends"). On the historical analysis, the court likewise misread the armed robbery laws to construct a presumption that the Founders broadly "regulate[d] the use of weapons in the furtherance of criminal activity." *Id.* at 930. As explained above, the armed robbery laws cannot bear the weight the Government and the *Underwood* panel would place on them. More importantly, though, such broad extrapolations clearly violate *Bruen*'s and *Rahimi*'s requirement that modern laws share the same "how and why."

Accepting the Government's reliance on *Risner* and *Underwood* would require this Court to disregard its own holdings in *Connelly* and

*Kimble* and to reintroduce precisely the form of purpose-driven, means-end reasoning *Bruen* forbids.  This Court should refuse that backslide.

## II.  MR. MADRID'S SECOND AMENDMENT CLAIM IS NOT PROCEDURALLY BARRED, WAIVED, OR UNTIMELY.

Perhaps recognizing the constitutional thin ice on which it skates, the Government also raises an array of procedural arguments for the first time on appeal.  Namely, the Government asks this Court to decline review based on a series of threshold objections—procedural default, waiver, and untimeliness—that are either forfeited, incorrect, or both.  None supplies a valid basis to avoid resolving the merits of a constitutional claim asserting a fundamental right.

### A.  This Court should not entertain the Government's eleventh-hour procedural default argument.

The Government concedes that Mr. Madrid's Second Amendment challenge may be raised in a § 2255 proceeding, *see* Appellee's Br. at 14–15, but urges this Court to decline review anyway on the ground that the claim is "procedurally barred" because Mr. Madrid did not raise it earlier. *Id*. at 16.  That contention fails for three independent reasons.

*First*, the timeline forecloses any finding of procedural default.  Mr. Madrid's claim rests on the analytical framework the Supreme Court

mandated in *Bruen*, decided in June 2022. Mr. Madrid pleaded guilty in 2019, and this Court dismissed his direct appeal in 2021. At neither stage did the legal rule he now invokes exist. *See* Appellee's Br. at 15 (agreeing that *Bruen* "announced a 'new' rule for purposes of collateral review"). Mr. Madrid's § 2255 motion therefore represented the first— and only—procedurally available opportunity to raise a *Bruen*-based Second Amendment challenge. A claim cannot be "defaulted" when it was unavailable at every prior stage of the proceedings. *See Murray* v. *Carrier*, 477 U.S. 478, 488 (1986) ("a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . would constitute cause").

*Second*, even if procedural default were otherwise available, the Government forfeited that argument by failing to raise it in the district court. The Government expressly concedes that point. *See* Appellee's Br. at 17 ("the [G]overnment acknowledges that it did not assert the procedural bar before the district court"). That admission is dispositive because this Court has been clear that arguments not raised below are forfeited. *See, e.g.*, *United States* v. *Jones*, 565 U.S. 400, 413 (2012); *United States* v. *Mix*, 791 F.3d 603, 611 (5th Cir. 2015).

16

While a forfeited argument may sometimes be reviewed for plain error, the burden rests squarely on the party seeking that extraordinary review to raise it. *See Mix*, 791 F.3d at 613. The Government makes no such argument here. As in *Mix*, "the [Government] does not argue that this Court should apply plain error review, so it has waived this point." *Id.* (citing *United States* v. *Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) ("[T]he failure to raise an issue on appeal constitutes waiver of that argument.")). This Court should not deny review of a fundamental constitutional claim based on a procedural theory the Government itself forfeited below and then waived again on appeal.

*Finally*, while the Court "may" raise the procedural bar *sua sponte,* it "should not do so lightly." *United States* v. *Allen*, 918 F.3d 457, 460 (5th Cir. 2019). Doing so would be particularly inappropriate here, where the Government waived the argument below and Mr. Madrid lacked notice.

The Government attempts to deflect responsibility for its failure to raise the issue below by blaming the magistrate judge. The Government suggests that it lacked a fair opportunity to assert the jurisdictional bar below because the magistrate judge granted Mr. Madrid's motion for

17

leave to amend one day and ruled on it the next. *See* Appellee's Br. at 17. But that narrative omits a critical fact: Mr. Madrid's motion for leave to amend—and his proposed amended § 2255 petition—sat on the district court's docket for nearly six months before the magistrate judge ruled.[2] During that six-month period, the Government did nothing. It did not oppose the motion, seek additional time, or otherwise alert the district court to any concern about procedural default.[3] That inaction constitutes waiver. *See United States* v. *Willis*, 273 F.3d 592, 595 (5th Cir. 2001) ("in order to raise the procedural bar at the appellate level, the government must attempt to invoke it in the district court first").

More fundamentally, *sua sponte* applying the procedural bar would raise serious due process concerns because Mr. Madrid was never given notice that procedural default was at issue. The Government did not raise the issue below, the district court did not rely on it, and this Court did not identify it in the Certificate of Appealability. Contrary to the Government's suggestion, *see* Appellee Br. at 19, cognizability and

---

[2] Mr. Madrid sought leave to amend on June 1, 2024, attaching the proposed amended petition. *See* ROA.58. The magistrate judge did not rule on it until November 18, 2024. *See* ROA.68.

[3] Under the Eastern District of Texas's Local Rules, the Government had 14 days to oppose the motion and could have sought an extension if it believed additional time was needed. L.R. CV-7(e). It did neither.

procedural default are distinct doctrines. Cognizability asks whether a category of claims may be raised on collateral review at all, while procedural default asks whether a cognizable claim is barred because of earlier litigation choices. There is some overlap, to be sure, but these two passengers do not always travel together. That truth is implicit in this Court's decision in *Allen*, which recognized that courts have discretion whether to raise and apply procedural default. *Allen*, 918 F.3d at 460. No such discretion attaches to the cognizability analysis. That demonstrates that cognizability and procedural default are analytically distinct, and that a court may be concerned with cognizability without being concerned with procedural defaults. Thus, an order requiring counsel to address cognizability does not necessarily give notice of procedural default by implication.

**B. Cause and prejudice and, independently, actual innocence excuse any procedural default, anyway.**

Even if the Court were to overlook the Government's forfeiture and reach the issue, procedural default would not bar review of Mr. Madrid's Second Amendment claim because he can establish both cause and prejudice, and independently, actual innocence.

*Cause*. To establish cause for a procedural default, "a movant must

show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States* v. *Robinson*, 323 Fed. Appx. 340, 341 (5th Cir. 2009) (quoting *United States* v. *Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (citation omitted)). One such "objective factor" is where "the legal basis for the claim was not reasonably available" at the time of the default. *Guerra*, 94 F.3d at 994. That standard is satisfied here.

At the time of Mr. Madrid's guilty plea and direct appeal, the legal basis for the Second Amendment claim he now advances was not reasonably available. Every court of appeals to consider a challenge to § 924(c) had upheld the statute under means–end scrutiny—the analytical framework then universally understood to govern Second Amendment claims. *See, e.g., United States* v. *Jackson*, 555 F.3d 635, 636 (7th Cir. 2009); *United States* v. *Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011); *United States* v. *Bryant*, 711 F.3d 364, 370 (2d Cir. 2013). This Court's decisions proceeded on the same understanding. *See National Rifle Ass'n of America, Inc.* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 195 (5th Cir. 2012).

Those decisions did not merely reject particular applications of §

20

924(c); they applied a settled constitutional test that placed the burden on the challenger and required courts to uphold firearm regulations based on governmental interests. Under that regime, the claim Mr. Madrid brings today—one that assigns the historical burden to the Government and requires invalidation absent relevantly similar Founding-era analogues—did not exist. Until *Bruen*, no defendant could obtain relief by pointing to the Government's failure to carry such a burden. Tellingly, the Government has not identified a single case where any court required such a showing or any litigant pressed such a rule. As such, the cause prong is met. *See Murray*, 477 U.S. at 488.

***Prejudice***. To demonstrate actual prejudice, a movant must show "'not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage.'" *Robinson*, 323 Fed. Appx. at 341 (quoting *Hughes* v. *Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008) (internal quotation marks and citation omitted)). In the context of a guilty plea, that showing is satisfied where the defendant demonstrates that "absent the error he would not have pleaded guilty." *See Guerra*, 94 F.3d at 994. The prejudice prong is easily satisfied here. Each day Mr. Madrid remains incarcerated pursuant to § 924(c) is a

21

direct consequence of the constitutional error he seeks to remedy. That prejudice is real and substantial.

*Actual innocence*. Finally, the procedural bar should not apply here because Mr. Madrid is actually innocent. As explained above and in Appellant's Opening Brief, 18 U.S.C. 924(c) is unconstitutional as applied to Mr. Madrid. And this Court has recognized that a conviction under an unconstitutional statute satisfies the actual innocence exception on collateral review. *See, e.g., United States* v. *Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019), *as revised* (Sept. 30, 2019); *United States* v. *Clark*, 852 F. App'x 812, 816 n.9 (5th Cir. 2021). That is because if a statute is unconstitutional, it is void *ab initio,* and the defendant is necessarily innocent of the charged offense. *See United States* v. *Davis*, 588 U.S. 445, 447 (2019) ("a vague law is no law at all"). In that circumstance, no set of facts can make the defendant guilty as charged, so the procedural bar necessarily falls away.

## C. Mr. Madrid's claim is neither waived nor untimely.

The Government's remaining arguments—that Mr. Madrid waived his claim in his plea agreement and that the claim is time-barred—fare no better. As an initial matter, both arguments are forfeited. The

Government had ample opportunity to raise waiver and timeliness in the district court while Mr. Madrid's amended § 2255 motion was pending for nearly six months. It did not do so. That failure constitutes waiver. *See, e.g., Garza* v. *Idaho*, 586 U.S. 232, 238–39 (2019) ("even a waived appellate claim can still go forward if the prosecution forfeits or waives the waiver"); *United States* v. *Riojas*, 139 F.4th 465, 472 (5th Cir. 2025) ("the government can waive a defendant's waiver"). This Court should therefore decline to consider the Government's waiver and timeliness arguments.

In any event, the Government is wrong on the substance of the waiver argument. It is true that "the right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement." *United States* v. *Baymon*, 312 F.3d 725, 727 (5th Cir. 2002). But the Supreme Court has long recognized that there are some constitutional claims that cannot be waived by a generic waiver clause in a plea agreement. In *Class* v. *United States*, the Supreme Court reaffirmed that a guilty plea does not automatically waive a defendant's right to raise constitutional challenges to the statute of conviction itself. 583 U.S. 174, 178 (2018). This principle, the Court

explained, derives from the *Menna–Blackledge* doctrine, under which a plea agreement's standard appellate waiver waives only "case-related constitutional defects" that occur prior to the plea—such as Fourth Amendment suppression issues, grand jury irregularities, or other procedural errors that are rendered irrelevant by the defendant's admission of factual guilt. *Id.* at 180–81. By contrast, constitutional claims that "implicate the very power of the State to prosecute the defendant," including claims that the statute of conviction is unconstitutional or that the admitted conduct cannot constitutionally be criminalized, are not forfeited by a guilty plea. *Id.* at 179–183.

Mr. Madrid's challenge to the constitutionality of 924(c) implicates "the very power of the State" to prosecute him. *Blackledge* v. *Perry*, 417 U.S. 21, 30 (1974). At bottom, Mr. Madrid's constitutional claim contends that "the State may not convict" him because the constitution protects his right to maintain firearms in his home for self-defense. *Menna* v. *New York*, 423 U.S. 61, 63 (1975). His plea agreement cannot waive that claim. For as this Court has acknowledged, "[a] court cannot give [] effect [to a sentence] not authorized by law." *United States* v. *Leal*, 933 F.3d 426, 430–31 (5th Cir. 2019) (quoting *United States* v. *Gibson*, 356 F.3d

761, 766 (7th Cir. 2004)).

## CONCLUSION

In sum, there is no historic analogue relevantly similar to § 924(c)(1)(A). None of the laws the Government has presented were designed to achieve the same purpose or work the same way. *Bruen* therefore requires that the judgement of the district court be reversed and that judgment be rendered in Mr. Madrid's favor.

SUBMITTED BY:

*/s/ T. Peyton Smith*

T. Peyton Smith
Damonta D. Morgan
**FORMAN WATKINS & KRUTZ LLP**
210 East Capitol Street, Suite 2200
Jackson, Mississippi 39201
peyton.smith@formanwatkins.com
damonta.morgan@formanwatkins.com

# CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing pleading was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on January 22, 2026.

/s/ *T. Peyton Smith*
T. Peyton Smith

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 4,710 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word Processor in 12-point Century Schoolbook font.